Gary TASSONE

v.

STATE of Rhode Island.

No. 2010–333–Appeal.

Supreme Court of Rhode Island.

May 21, 2012.

Katherine C. Essington, Esq., for Applicant.

Jane M. McSoley, Department of Attorney General, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Gary Tassone (Tassone or applicant) appeals from the judgment of the Superior Court denying his application for postconviction relief. Before this Court, Tassone contends that the hearing justice erred in (1) denying his application for postconviction relief without conducting an evidentiary hearing and (2) wrongly dismissing his assertions of ineffective assistance of counsel. Tassone argues that these errors warrant remand to the Superior Court for an evidentiary hearing. This case came before the Supreme Court for oral argument on February 8, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record, and reviewing the written and oral submissions of the parties, we conclude that cause has not been shown and we will decide this case at this time without further briefing or argument. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## Facts and Travel

Tassone was convicted of a particularly gruesome murder on January 28, 1997, and was sentenced to life imprisonment without the possibility of parole. We affirmed his conviction in *State v. Tassone,* 749 A.2d 1112 (R.I.2000), and the facts pertinent to the underlying case are set forth in that opinion. We will discuss such of the facts that are relevant to this appeal from the denial of his application for postconviction relief.

On June 30, 1994, Kendra Hutter's body was found buried at the beach at Crescent Park in East Providence. An examination of her remains revealed that Kendra had suffered numerous chopping wounds, a fractured skull, and other traumatic brain injuries that resulted in brain swelling and eventual death. On that same day, Kendra's estranged husband, Christopher Hutter, reported that she was missing. Hutter told the police that Kendra had gone out the previous evening with a man named

"Gary," and he gave the police a business card with Gary's name and telephone number on it.

The police soon located Gary Tassone; he admitted knowing Kendra, but denied having seen her the previous night. Tassone said he had a date scheduled with Kendra on June 29, but that she had canceled. At the request of the police detectives, Tassone then agreed to go to the police station to answer further questions.

At the station, Tassone signed four separate written statements over the course of the next several hours. In the first statement, given at 7:55 p.m. on July 1, 1994, Tassone said that he had met Kendra through a newspaper advertisement and had gone out with her, but asserted that he had not seen her on the night of June 29. At 8:50 p.m., Tassone signed a waiver of rights form, and at 10:45 p.m. he gave a second statement to police. In that statement, he admitted that he had, in fact, gone out with Kendra on the night of June 29. He said that he had brought her to a beach in Riverside, where they had sexual intercourse on a blanket, and that he had driven her home afterward.

At midnight, Tassone gave a third statement. This time, he said that while at the beach digging sand castles with a shovel, he was startled by something in the woods and "swung the shovel at the sound but hit Kendra in the face." He stated that because he was afraid that he had killed her, he "used the shovel to cover her up with sand so nobody would know."

At 10:30 a.m. the next morning, Tassone signed another rights form, and he gave police a final statement at 11:15 a.m. In this statement, Tassone provided more details about the incident, and he indicated that after burying Kendra's body, he drove

to Seekonk, Massachusetts, and discarded the blanket and shovel on the side of the road. Also at that time, Tassone asked police to remove a handgun from his room at his mother's house, and he requested that police speak with other women he had met through personal advertisements, presumably so that they could attest to his peaceable nature.

On August 4, 2000, Tassone filed an application for postconviction relief under G.L.1956 § 10–9.1–1. In that application, he alleged that his constitutional rights had been adversely impacted by the ineffective assistance of his trial counsel and by witness perjury. Three postconviction relief attorneys were appointed to represent applicant, all of whom were allowed to withdraw for various reasons over the course of the next five years. A fourth attorney (hereinafter counsel) entered his appearance for applicant on August 19, 2005, and that attorney represented him throughout the remainder of the Superior Court proceedings for postconviction relief. However, on January 10, 2008, after conducting a review of Tassone's application for postconviction relief, counsel filed a "no-merit" memorandum and moved to withdraw from the case in accordance with the *Shatney*[1] procedure that has been adopted by this Court.

Counsel's memorandum to support his motion to withdraw identified four issues that had been raised by applicant: (1) that his trial attorney had failed to adequately prepare for trial; (2) that police officers committed perjury in their testimony about his statements; (3) that police committed perjury when they testified that Tassone "pointed out" where to find the shovel and blanket even though he was handcuffed at the time and therefore un-

---

1. *Shatney v. State*, 755 A.2d 130 (R.I.2000), outlined the procedure court-appointed counsel must follow when seeking to withdraw from a postconviction-relief proceeding after reaching the conclusion that a postconviction-relief application lacks merit.

able to point to anything; and (4) that his trial attorney was ineffective because he requested a continuance, in part because he said he needed additional time to speak with experts, but at trial no experts were called by the defense.

Counsel also indicated that applicant had requested that the witness statements and rights forms that applicant signed in the East Providence police station be examined by a forensic-document examiner, and that experts be employed to review certain pieces of evidence that had been used against him at trial. The applicant also maintained that he needed to obtain information from the Cumberland police that would enable him to demonstrate that he should have received *Miranda* warnings earlier than he did. After reviewing the issues raised by applicant and after conducting a thorough and conscientious review of the record, counsel concluded that there was no evidence to indicate that applicant's trial attorney's representation was deficient in any way, or that it in any way resulted in prejudice to Tassone.

According to counsel, the issues raised in Tassone's application for postconviction relief were "wholly frivolous, and not supported by existing law, nor by a good faith basis for the reversal, extension, or modification of existing law." Concomitantly, counsel sought to withdraw as counsel of record for Tassone.

A hearing on the motion to withdraw was held on January 15, 2008. The hearing justice indicated that she was inclined to grant the motion to withdraw, and she provided Tassone with the opportunity to address the assertions raised in the *Shatney* no-merit memorandum and to proceed, *pro se* on his application. Tassone, however, indicated that he wished to address nine issues that previously had not been heard. Six of those issues involved his allegations that detectives had planted, destroyed, tampered with, or manufactured evidence against him. Tassone also alleged prosecutorial misconduct, perjury by detectives, and ineffective assistance of counsel. Tassone also argued that because his trial lawyer had not presented one expert to testify, "he need[ed] to be asked" why. The hearing justice expressed her concern that applicant had raised issues that had not been addressed in the *Shatney* memorandum, and she directed counsel to draft another memorandum, incorporating all the new issues Tassone raised at the hearing on that day.

Also, at the conclusion of the hearing on January 15, 2008, the parties discussed the fact that the trial transcripts[2] were missing and that the Superior Court clerk's office was unable to track them down and locate them. Counsel asserted to the court that he originally had had access to and reviewed Tassone's personal copies of the record and that he had had an opportunity to "review the entire trial transcript in [his] initial preparation of this motion."[3] On February 12, 2008, counsel dutifully submitted a supplemental memorandum to support his motion to withdraw, address-

**2.** Postconviction relief counsel and the state agreed that the official court transcript was missing and that the clerk's office was unable to locate it.

**3.** In court, Tassone maintained that his personal copies of the transcript and trial record had been destroyed in a flood at the Adult Correctional Institutions after counsel had used them to prepare his submission to the Superior Court. However, on January 12, 2012, this Court received correspondence from Tassone in which he admitted that he had fabricated the story about pipes breaking at the ACI. In fact, he acknowledged that "my copy was never destroyed and the originals are in my possession." Despite this inexcusable lack of candor, and in the posture of this appeal, we nonetheless will review the denial of this application based on the evidence that was available to the hearing justice at the time she rendered her decision.

ing the new issues raised by applicant supporting his application for postconviction relief.[4] Counsel addressed each of these arguments in turn and concluded that none of them had any merit. Counsel then pressed his motion to withdraw.

A final hearing on Tassone's application for postconviction relief was held on February 28, 2008. At that hearing, the justice confirmed with Tassone that all the issues he wished to raise were before the court. The justice then asked whether a prior written statement by Tassone along with a folder of additional material he wished to submit "comprise[d] all of the evidence and arguments that you want to present to me as to why your application has merit and why you disagree with [counsel's] opinion." Tassone confirmed that his argument was complete, and the justice indicated that she would review the materials and take the matter under advisement.

The court issued a written decision on January 13, 2010, denying Tassone's application for postconviction relief after having "considered the Rhode Island Supreme Court's decision in *State v. Tassone* * * * [applicant's] [application] for post-conviction relief, as amended, counsel's no-merit memoranda in support of his motion to withdraw, [applicant's] memoranda in opposition to that motion, and the record of the January 15, 2008 post-conviction relief hearing."

In her decision, the hearing justice reviewed Tassone's allegations of ineffective assistance of counsel. She found that applicant's first claim that "trial counsel committed perjury before the trial justice" was baseless. In so finding, the hearing justice noted that "at the hearing at which [applicant] claims trial counsel perjured himself, all trial counsel said was that he needed more time to consult with his defense experts." The justice thereafter found that trial counsel did in fact, retain the services of a DNA expert and that he had commissioned a psychiatric evaluation of Tassone. Moreover, the hearing justice found that the decision not to call an expert witness was tactical in nature.

The applicant's second argument, that trial counsel's representation was inadequate because he requested a reassignment of the trial date, was determined by the hearing justice to be "ludicrous." The justice noted that "trial counsel specifically indicated that the reason he was requesting a reassignment was because he had just finished with a different trial and needed time to prepare." The court found that trial counsel's request for more time actually militated against Tassone's allegation of ineffective assistance of counsel, and the delay "undoubtedly improved the quality of [applicant's] representation."

After reviewing the report of the document examiner engaged by counsel, the court also found that Tassone's third argument, that trial counsel failed to have the

---

4. The additional claims alleged: (1) that postconviction relief counsel lied in his first *Shatney* memorandum when he asserted that the document examination did not reveal tampering; (2) that East Providence police detectives committed perjury when they testified that Tassone was not a suspect when they first encountered him; (3) that trial counsel committed perjury to the trial justice concerning the issue of expert witnesses; (4) that trial counsel was ineffective because he requested examination of the wrong document; (5) that

secondary evidence would prove that evidence was planted in applicant's car, but that evidence was either destroyed or not disclosed; (6) that there was substantial evidence, not presented at trial, that another person committed the crime; and (7) that the only evidence linking applicant to the crime was manufactured by the East Providence police, and local experts, who could prove this theory, were not contacted by trial counsel.

correct statement and *Miranda* forms analyzed, lacked any merit. The hearing justice also denied applicant's contention that trial counsel was deficient because he failed to call an alleged eyewitness to the stand and because he failed to introduce evidence tending to show that Kendra's estranged husband had murdered his wife.

In ruling against Tassone, the hearing justice applied the two-part test as set out in *Strickland*[5] and found applicant's arguments all failed. Specifically, she found "it is highly unlikely that even the most skilled trial counsel could have successfully overcome the substantial evidence—much of which, it is worth noting, [Tassone] voluntarily provided to the East Providence police detectives—weighing against [his] claimed innocence." The hearing justice also determined that Tassone fell short of demonstrating that any mistakes made by his trial attorney "could be said to have contributed significantly to the ultimate verdict or sentence." [6]

A judgment was entered dismissing Tassone's application on January 13, 2010 and an order was entered granting counsel's motion to withdraw on January 20, 2010. Tassone filed a notice of appeal, *pro se*, on January 25, 2010.

## Standard of Review

██ "Post-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." *Chapdelaine v. State*, 32 A.3d 937, 941 (R.I.2011) (quoting *Gordon v. State*, 18 A.3d 467, 473 (R.I.2011)). When reviewing the denial of an application for postconviction relief, "this Court affords great deference to the hearing justice's findings of fact and will not disturb his or her ruling 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence.' " *Brown v. State*, 32 A.3d 901, 907–08 (R.I.2011) (quoting *Page v. State*, 995 A.2d 934, 942 (R.I. 2010)). However, this Court will "review *de novo* 'any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.' " *Id.* at 908 (quoting *Cote v. State*, 994 A.2d 59, 63 (R.I.2010)); *see also Chapdelaine*, 32 A.3d at 941.

██ "[T]he burden of proving, by a preponderance of the evidence, that such relief is warranted" is placed upon the applicant. *Brown*, 32 A.3d at 907 (quoting *State v. Laurence*, 18 A.3d 512, 521 (R.I. 2011)).

## Analysis

### I. Ineffective Assistance of Counsel

This appeal focuses on what applicant argues are three deficiencies in his trial attorney's representation. First, he argues that his trial counsel provided him with ineffective assistance of counsel because he failed to call an alleged eyewitness to testify. He contends that the witness would have testified that she lived near Kendra and that she had observed her leave her house and get in a white car driven by a man with long hair on the night of the murder. Tassone says this is significant because at the time of the murder, he drove a maroon car and had short hair.

Second, he argues that his trial attorney failed to have the correct *Miranda* rights forms examined by an expert witness. He alleges that an expert would have testified

---

5. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

6. Lastly, the hearing justice considered and dismissed Tassone's other arguments for post-conviction relief, none of which has been appealed to this Court.

that the first waiver of rights form signed by Tassone had been manipulated in that the names of the detectives had been added at a different time than other information on the form. He also alleges that two different typewriters had been used to complete the form. Tassone argues that had his trial attorney had the correct form analyzed, the testimony of an expert could have cast doubt on the police version of events about when he first was advised of his rights.

In light of the fact that his own statements to the police were the most damaging evidence against him, he argues that testimony about the rights waiver form could have altered the outcome of the suppression hearing and the trial. Because his defense was based primarily on an assertion that he gave his statements involuntarily, he contends that the failure of trial counsel to have the waiver-of-rights form examined by an expert was not an objectively reasonable tactical decision.

Finally, Tassone alleges that his trial attorney failed to present evidence that a third party, the victim's husband, Christopher Hutter, committed the murder.[7] Tassone says that evidence that Hutter could have committed the murder included his statement to police that "people who have sex are nothing but dogs," coupled with the discovery by the police of a dog bowl buried in the sand that was on the victim's chest. Tassone argues that Hutter had a motive for committing the murder because he was aware that his estranged wife, with whom he still was living, was dating other men she was meeting through personal advertisements. Tassone also contends that Hutter's statement to police about the time his wife returned home from work on the night of the murder was inconsistent with the statement given by her supervisor at work.

In addition, applicant points out that Hutter initially refused to allow police to search his vehicle or the couple's home, and that at various times during his interview with police, Hutter became irrational and spoke of killing himself. Tassone asserts that introduction of Hutter's actions could have been construed as consciousness of guilt that probably would have had an impact on the jury if trial counsel had attempted to present it to the jury.

■ When evaluating allegations of ineffective assistance of counsel, the standard employed by this Court is identical to the one set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Applicants are required to demonstrate that: (1) " 'counsel's performance was deficient' in that it fell below an objective standard of reasonableness," *Lynch v. State*, 13 A.3d 603, 605–06 (R.I.2011) (quoting *Strickland*, 466 U.S. at 687, 688, 104 S.Ct. 2052), and (2) "that such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the appli-

---

7. The hearing justice considered applicant's claim that evidence existed linking the victim's husband to the crime but applied the "raise or waive rule," reasoning that it was, in essence, a claim of newly discovered evidence. General Laws 1956 § 10–9.1–8 provides a procedural bar not only to issues that have been raised and decided in a previous postconviction-relief proceeding, but also to "the relitigation of any issue that could have been litigated in a prior proceeding, even if the particular issue was not raised." *Oui-*

*mette v. State*, 785 A.2d 1132, 1138 (R.I.2001) (citing *Carillo v. Moran*, 463 A.2d 178, 183 (R.I.1983)).

However, even though applicant did not raise this issue as an ineffective assistance of counsel claim, we will review it because the original and amended applications consistently have alleged ineffective assistance of counsel. *See* § 10–9.1–6(a) ("In considering the application [for postconviction relief] the court shall take account of substance regardless of defects of form.").

cant's right to a fair trial." *Bustamante v. Wall*, 866 A.2d 516, 522 (R.I.2005) (quoting *Brennan v. Vose*, 764 A.2d 168, 171 (R.I. 2001)).

■ This Court requires that scrutiny of counsel's performance be highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Lynch*, 13 A.3d at 606.

### Failure to Hold an Evidentiary Hearing

■ The overarching argument advanced by applicant is that the hearing justice erred when she did not hold an evidentiary hearing to evaluate his claims of ineffective assistance of counsel. This, he says, coupled with the hearing justice's "inability to review the trial transcripts rendered her incapable of fairly assessing [applicant's] allegations of ineffective assistance of counsel."

The state contends that an evidentiary hearing was not required because Tassone was provided with an opportunity to reply to the court's proposed dismissal,[8] and because the hearing justice determined that applicant's contentions raised no genuine issues of material fact.

■ It is true that this Court consistently has held that "the summary dismissal of an applicant's application for postconviction relief does not require an evidentiary hearing, so long as an applicant is provided with an opportunity to respond to the court's proposed dismissal." *Brown*, 32 A.3d at 909 (citing *Sosa v. State*, 949 A.2d 1014, 1017 (R.I.2008)); *see* § 10–9.1–6(b), (c). "If the applicant's reply reveals that there are no genuine issues of material fact in dispute, then an evidentiary hearing need not be provided and the court can proceed to rule on the application without a hearing." *Brown*, 32 A.3d at 909 (quoting *O'Neil v. State*, 814 A.2d 366, 367 (R.I.2002)). This, however, necessarily is predicated on the court's having the ability to review the trial record in the absence of an evidentiary hearing.

We are perplexed by the fact that the trial transcript was unavailable and there is no good explanation about why it was missing.[9] Without a hearing or transcripts, we are unable to discern how the hearing justice could make factual findings about trial counsel's performance.[10] Ulti-

---

8. There is no question that the hearing justice ensured that Tassone had ample opportunity to reply to the court's proposed dismissal and that the hearing justice was enormously patient with him. *See Sosa v. State*, 949 A.2d 1014, 1017 (R.I.2008). Even after counsel's first *Shatney* memorandum was filed with the court, the hearing justice gave applicant an opportunity to present a list of seven additional complaints, along with documentation, and ordered counsel to prepare a supplemental *Shatney* memorandum addressing those contentions. At the second hearing before the court on February 28, 2008, Tassone was given a *further* opportunity to respond to the proposed dismissal, which he was allowed to do by submitting written materials. It is evident that applicant had ample opportunity to

respond to the proposed dismissal in accordance with § 10–9.1–6(b).

9. It appears that the hearing justice had the benefit of one page of transcript from pre-trial motions that had been attached to Tassone's application.

10. These circumstances are factually distinguishable from *Page v. State*, 995 A.2d 934, 937 (R.I.2010), in which the applicant had been sentenced to life imprisonment without the possibility of parole at trial for "the most atrocious, barbaric killing imaginable." In his postconviction-relief application, the applicant alleged that trial counsel's representation constituted ineffective assistance of counsel. *Id.* at 938. The applicant's trial counsel was the sole witness at the postconviction-relief hearing. *Id.* After considering the trial

mately, the court found that "there [was] nothing in the record to support any conclusion other than that trial counsel represented [applicant] to the best of his ability."

This Court has expounded on the value of trial transcripts when the performance of trial counsel is assessed. In *State v. D'Alo*, 477 A.2d 89, 90 (R.I.1984), we upheld the Superior Court's denial of the applicant's application for postconviction relief based on ineffective assistance of counsel. In that case, no evidentiary hearing was held, but the applicant submitted a detailed memorandum and several exhibits consisting of excerpts from the trial transcript to support his application. *Id.* at 90–91. The exhibits contained portions of trial testimony, including relevant questions posed by defense counsel, critical objections made by defense counsel, and significant discussions between defense counsel and the trial justice. *Id.* at 91. This Court explained that:

> "In determining whether a trial counsel's performance was effective, no evidence is more probative than the trial transcript, for through the transcript a trial justice hearing [an application] for postconviction relief can observe, albeit second-hand, what actually happened as far as the trial counsel's actions are concerned." *Id.*

On appeal, this Court held that the trial justice in that case had "sufficient evidence before him to assess the performance of [the applicant's] trial counsel." *Id.*

Although scrutiny of trial counsel's performance must be deferential, the court's review still must strive "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Lynch,*

13 A.3d at 606. Here, the absence of a transcript, coupled with the lack of an evidentiary hearing, precluded the court from conducting an adequate, independent review of trial counsel's actions and from "look[ing] at the entire performance of counsel." *Brown v. State,* 964 A.2d 516, 528 (R.I.2009).

No evidentiary hearing was conducted to explore the validity of applicant's arguments, thus leaving unexamined the foundation for a "reasonable probability" that but for trial counsel's errors, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### Excessive Reliance on the *Shatney* Memoranda

██ "[T]he post-conviction relief statute provides that the court may dismiss an application on the pleadings if, after reviewing the application, the answer or motion, and the *record,* the court determines that it lacks merit." *Shatney v. State,* 755 A.2d 130, 133 (R.I.2000) (emphasis added); *see* § 10–9.1–6(b); *see also Toole v. State,* 713 A.2d 1264, 1265 (R.I.1998). However, as recently echoed in *State v. Laurence,* 18 A.3d 512 (R.I.2011), "the appointed counsel's determination of frivolousness * * * would not necessarily warrant a court determination of frivolousness * * *." *Id.* at 523 (quoting *Shatney,* 755 A.2d at 133).

In this case, the basis for the court's finding that applicant's allegation of ineffective assistance of counsel lacked merit was admittedly based on "counsel's memoranda and the Rhode Island Supreme Court's decision in *State v. Tassone.*" The court's decision cites several facts that lead to the inevitable conclusion that the hear-

---

counsel's testimony at the hearing, the hearing justice, who had presided over the trial and had the benefit of the trial transcript, rejected the applicant's claim. *Id.* at 939.

He found that trial counsel had made sound tactical decisions and had conducted a reasonable investigation and made reasonable decisions about possible defenses. *Id.* at 940.

ing justice arrived at her determination after reading and relying on counsel's *Shatney* memoranda.[11] For example, the court found that trial counsel retained the services of a DNA expert, commissioned a psychiatric evaluation of Tassone, "aggressively attempted to prevent the prosecution from introducing [applicant's] incriminating statements into the record,"[12] called witnesses to testify on applicant's behalf, and "aggressively cross-examined the state's witnesses."

However, it is unclear to us how the hearing justice was able to independently determine that no genuine issues of material fact existed surrounding applicant's claims of ineffective assistance of counsel without having the benefit of a trial transcript[13] or without conducting an evidentiary hearing. It is also noteworthy that the hearing justice never asked Tassone whether he wanted to present any testimonial evidence to support his arguments. *Cf. Brown*, 32 A.3d at 905 (in which the hearing justice offered the applicant an opportunity to present testimonial and documentary evidence but the applicant declined to do so).

In our opinion, the hearing justice relied excessively on counsel's *Shatney* memoranda when she found that the applicant's claim of ineffective assistance of counsel was wholly without merit. Our concern is heightened by the fact that this was the first postconviction relief application filed by the applicant, who was sentenced to life without the possibility of parole. In light of the severity of this sentence, we hold, therefore, that from this point forward, an evidentiary hearing is required in the first application for postconviction relief in all cases involving applicants sentenced to life without the possibility of parole.

### Conclusion

Based upon the foregoing, we vacate the judgment of the Superior Court and remand the papers in the case to that tribunal for an evidentiary hearing.

Justice INDEGLIA, dissenting.

Because my review of the postconviction proceedings in the Superior Court leads me to conclude that the hearing justice properly followed the mandates of G.L. 1956 chapter 9.1 of title 10, and our case law related to it, I respectfully disagree with the majority's opinion in this case.

While my colleagues find that an evidentiary hearing should have been conducted, especially since Tassone was sentenced to life without parole, in fact, § 10–9.1–6 clearly does not require one and permits dismissal of a postconviction-relief application "[w]hen a court is satisfied, on the basis of the application, the answer or motion, and the record,[14] that the appli-

---

11. The hearing justice did note during the hearing that the *Shatney* no-merit memorandum prepared by counsel was "probably the most comprehensive" memorandum regarding a postconviction relief application the court had ever received, and he is to be complimented for his efforts in this case.

12. The hearing justice may have gleaned some information about trial counsel's actions surrounding the introduction of Tassone's fourth statement into evidence from this Court's opinion in *State v. Tassone*, 749 A.2d 1112, 1115 (R.I.2000).

13. This Court has held on numerous occasions that transcripts are an integral part of the record and that provide a foundation for a proper appellate review of the proceedings below. *See Notarantonio v. Notarantonio*, 941 A.2d 138, 150 (R.I.2008); *Riley v. Stone*, 900 A.2d 1087, 1094 (R.I.2006); *Bustamante v. Wall*, 866 A.2d 516, 523 (R.I.2005).

14. "Record" is defined in Black's Law Dictionary as "[t]he official report of the proceedings in a case, including the filed papers, a verbatim transcript of the trial or hearing (if any), and tangible exhibits." Black's Law Dictionary 1387 (9th ed.2009).

cant is not entitled to post conviction relief and no purpose would be served by any further proceedings * * *." Such dismissal is permitted as long as the applicant has been provided the opportunity to reply to the proposed dismissal and no genuine issues of material fact exist. *See* § 10–9.1–6(b). Likewise, "[t]he court may grant a motion by either party for summary disposition of the application when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Section 10–9.1–6(c). Neither of these provisions requires the conducting of an evidentiary hearing. Indeed, a hearing justice is not required to conduct an evidentiary hearing if, from an applicant's reply to the court's proposed dismissal, the hearing justice determines that no genuine issue of material fact exists and that, therefore, no need for an evidentiary hearing exists. *See Toole v. State,* 713 A.2d 1264, 1266 (R.I.1998). "However, if the [hearing] justice believes, after considering [an applicant's] reply, that an evidentiary hearing is necessary, then he [or she] must afford [the applicant] such a hearing." *Id.*

Perhaps no area of the criminal justice system challenges the administrative skills of a trial justice more than the handling of postconviction-relief applications. Often filed by self-represented defendants, whose arguments are sometimes inartfully stated, the trial justice must carve out those deserving of legal consideration, while at the same time preserving the judicial process from frivolous claims.

To this end, in *Shatney v. State,* 755 A.2d 130 (R.I.2000), we held that

"counsel for an applicant may request permission from the court to withdraw, based upon an assessment that the ap-

plication has no arguable merit. To do so, however, appointed counsel must file with the court and serve upon the applicant a motion to withdraw accompanied by a 'no-merit' memorandum that details the nature and extent of his or her review of the case, lists each issue the applicant wished to raise, and explains why in counsel's professional opinion those issues and any others that he or she may have investigated lacked merit. The court then must conduct a hearing with the applicant present. If, *based upon its review of counsel's assessment of the potential grounds for seeking post-conviction relief* and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant that he or she shall be required to proceed pro se, if he or she chooses to pursue the application." *Id.* at 135 (citing *Commonwealth v. Albrecht,* [554 Pa. 31] 720 A.2d 693, 699 n. 7 (Pa.1998) (emphasis added)).

This Court's opinion in *Thornton v. State,* 948 A.2d 312 (R.I.2008), demonstrates the manner in which a hearing justice may simultaneously apply both the statutory provisions permitting summary dismissal and the mandates of *Shatney* in considering an applicant's postconviction-relief endeavor. In *Thornton,* after a series of three hearings and following the court's consideration of multiple memoranda by both the applicant and his counsel, who was seeking to withdraw, the hearing justice deemed the applicant's claims to be without merit, concurrently dismissing the application without an evidentiary hearing and granting counsel's motion to withdraw. *Thornton,* 948 A.2d at 317. In affirming the dismissal, this Court noted that the "applicant was given an opportunity to speak on his own behalf at all three hearings; and he was permitted to dispute the arguments made in each of the no-merit

memoranda, both at oral argument and in his supplemental filings." *Id.* Thus, the hearing justice was not required under *Shatney* to permit further litigation following his "no-merit" determination.

In my view, the hearing justice was scrupulous in following these mandates. Not only did she review the first "no-merit" memorandum filed by Tassone's appointed attorney, terming it "the most comprehensive memorandum regarding a post conviction relief application in a *Shatney* proceeding this [c]ourt has ever received[,]" but, she allowed Tassone to submit additional complaints and documentation and ordered his attorney to prepare a supplemental memorandum addressing those issues. Still further, while considering the second "no-merit" memorandum filed by the attorney, the hearing justice permitted Tassone to make more arguments and to submit a folder of additional material, which she agreed to consider before rendering a written decision. She specifically asked Tassone whether these "comprise[d] all of the evidence and arguments that you want to present to [the court] as to why your application has merit and why you disagree with [appointed counsel]." Tassone assured the hearing justice that his argument was complete. In my view, Tassone was provided ample opportunity to reply to the proposed dismissal of his application.

In her decision, the hearing justice studiously considered all of Tassone's claims, finding that none had merit and remaining "mindful of [this] Court's observation [in *Thornton*, 948 A.2d at 317,] that permitting [an applicant] whose claims for relief have been deemed to be 'unavailing' to proceed pro se with his application for post-conviction relief would constitute 'an exercise in futility and an inefficient use of [judicial] resources.'" Accordingly, she denied and dismissed his application.[15]

The majority notes that a court's authority to rule on an application in the absence of an evidentiary hearing is "predicated on the court's having the ability to review the trial record." I respectfully suggest that the factual circumstances of this case reveal that the hearing justice indeed reviewed the available trial record, which comprised more than just the trial transcripts. Moreover, in his appeal to this Court, Tassone, at least until shortly before oral argument, contended that the hearing justice erred in denying his application for postconviction relief without an evidentiary hearing because, at the time she issued her ruling, the transcripts of Tassone's underlying murder trial had been lost or destroyed and therefore were unavailable for her review. *See State v. D'Alo*, 477 A.2d 89, 91 (R.I.1984). Although those transcripts were reviewed by Tassone's postconviction-relief attorney in preparing his first memorandum, they apparently were missing by the time of the hearing, during which the court, with Tassone present, discussed this issue. Tas-

---

15. The hearing justice's careful analysis is evinced by the following excerpt of her decision:

"[The applicant] raises no credible allegations to support any viable grounds for post-conviction relief. Moreover, because none of these issues were raised at trial, and none of them fall under any of the exceptions to the 'raise or waive' rule, they are barred from this action for post-conviction relief. [The applicant] clearly does not have any legitimate claims for relief. He

makes any allegation, however unsubstantiated, that could even theoretically undermine his conviction or sentence. With each memorandum, his claims mutate and multiply. [Tassone's] application for post-conviction relief can charitably be characterized as a 'moving target.' *Thornton*, 948 A.2d at 315. Accordingly, this [c]ourt agrees with counsel and finds all of [applicant's] stated grounds for post-conviction relief to be wholly frivolous and without merit."

sone suggested that his copy was lost due to a water leak at the Adult Correctional Institutions (ACI) or somehow otherwise was misplaced. While this contention may have presented an interesting issue for our consideration, it was totally deflated when his appellate attorney notified us on February 1, 2012, that

> "[a]s a result of the defendant-appellant's recent letter to the Court in which he discloses that he has a complete copy of the trial transcripts in his cell at the ACI that he could have made available to the trial court, undersigned counsel withdraws the first claim of error [the need for evidentiary hearing if there is no transcript] in the defendant-appellant's [p]re[b]riefing [s]tatement and [s]upplemental memorandum."

With this prong of his appeal gone, Tassone was forced to rely on what he viewed,

and I reject, as error in the hearing justice's denial of his three claims of ineffective assistance of counsel.

Finally, I repeat my concern that nothing in either chapter 9.1 of title 10 or our postconviction-relief case law requires an evidentiary hearing in a life without parole case. I believe that if one is required, it should be accomplished by legislative amendment or, if under our supervisory powers, only by suggesting that the "better practice" is to have one.[16] In any case, because of the thorough analysis of the hearing justice, I see no need for one here.

Because of these differences, I must respectfully dissent.

---

**16.** We use the term "better practice" in suggesting allocution after a person has been found to be a violator of probation. *See State v. Jones,* 969 A.2d 676, 681–82 (R.I.2009); *State v. Ratchford,* 732 A.2d 120, 123 (R.I. 1999).