**Supreme Court**

No. 2006-98-Appeal.
(PM 04-1512)

Kyle Campbell                    :

v.                    :

State of Rhode Island.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kyle Campbell　　　　　　　:

v.　　　　　　　　　　　:

State of Rhode Island.　　　　:

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**　The applicant, Kyle Campbell (Campbell or applicant), appeals from the Superior Court's denial of his application for postconviction relief, alleging, inter alia, that the trial justice erred in failing to appoint counsel before he dismissed Campbell's claims.  Because G.L. 1956 § 10-9.1-5[1] mandates that an indigent applicant for postconviction relief be represented by the Public Defender or appointed counsel, and Campbell was not provided with the appointed counsel to which he was entitled, we vacate the judgment and remand this case to the Superior Court for further proceedings in accordance with this opinion.

---

[1] General Laws 1956 § 10-9.1-5 provides as follows:

> "An applicant who is indigent shall be entitled to be represented by the public defender.  If the public defender is excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation, the court shall assign counsel to represent the applicant.  An indigent applicant is entitled, to the extent deemed appropriate by the court, to be provided with stenographic, printing, and other costs necessary to proceed under this chapter."

**Facts and Travel**

Campbell was convicted of first-degree murder in 1995. He was seventeen years old—a juvenile—at the time of the murder. The underlying facts are set forth in detail in our opinion affirming that conviction, State v. Campbell, 691 A.2d 564, 566-72 (R.I. 1997), and need not be repeated here. On March 22, 2004, Campbell filed a pro se application for postconviction relief. This application—Campbell's first—asserted six allegations of error: (1) the DNA evidence admitted against him in his trial was unreliable;[2] (2) the state's failure to preserve exculpatory photographs violated Campbell's due process rights; (3) a Providence police detective testified falsely about Campbell's confession; (4) the trial justice erroneously prohibited Campbell's defense counsel from cross-examining another detective about blood found on one of Campbell's shirts and also erroneously precluded him from calling witnesses to testify about the loss of the photographs, all in violation of Campbell's constitutional rights to due process and confrontation; (5) the evidence against Campbell was insufficient to support a conviction; and (6) defense counsel's failure to call the police chief for the City of Providence concerning the circumstances of Campbell's confession amounted to ineffective assistance of counsel. Campbell requested the appointment of counsel.

In response, the state moved to dismiss the application, arguing that four of Campbell's allegations of error were barred by principles of res judicata.[3] Additionally, the state averred that Campbell's allegation of false testimony by a police detective failed to allege newly discovered

---

[2] In his application, Campbell frames this contention in the following terms: "DNA [e]vidence submitted at Petitioner's trial was not sufficient to prove [P]etitioner's guilt beyond a reasonable doubt." A review of the substance of this claim, however, convinces us that it is concerned with the unreliability of the DNA evidence offered against him.

[3] Specifically, the state asserted that res judicata principles barred reconsideration of claims (1), (2), (4), and (5) of the six claims discussed above.

evidence, and therefore should be dismissed. Finally, with respect to the claim of ineffective assistance of counsel, the state argued that Campbell's allegations failed to satisfy the two-pronged standard of Strickland v. Washington, 466 U.S. 668, 687 (1984), and, accordingly, should be dismissed.

On April 1, 2005, Campbell appeared in Superior Court and once again requested a lawyer. Before addressing Campbell's request for counsel, the trial justice entertained argument on the state's motion to dismiss. The state pressed for immediate dismissal of five of the six allegations raised in the application, but conceded that "some sort of an investigation" should be conducted on Campbell's allegation of ineffective assistance of counsel before it was dismissed. When the trial justice inquired whether Campbell wished to respond, he attempted to address the state's res judicata contentions. The trial justice explained to Campbell that there was "no question" that all of the allegations save for Campbell's contention about ineffective assistance of counsel had been adjudicated by this Court in Campbell's direct appeal. The trial justice accordingly granted the state's motion to dismiss in all respects except for the allegation of ineffective assistance of counsel. The trial justice advised Campbell as follows:

> "What we do in cases like this is, I will appoint an attorney to represent your interest. The Court appoints an attorney to make an independent examination by discussing with you your concerns about this. That lawyer will probably talk to [Campbell's trial counsel], if [trial counsel] wishes to speak to him. He will review the trial transcript and record, which is available because this case went to the Supreme Court, and that attorney will make an independent report to this Court as to whether or not that attorney believes that you have merit to your allegation that you were not given appropriate counsel in this case.

> "If that attorney's report says that he believes, that is, your counsel, that there is cause to believe that you might not have been effectively represented, then the Court will appoint an attorney to represent your interest and a hearing will be conducted.

- 3 -

"＊ ＊ ＊ If that attorney comes back and says we reviewed the record, talked to the defendant, made an independent investigation, and we don't feel there is merit to the defendant's claim that his counsel was ineffective, then you have the right to proceed with a full hearing, but representing yourself, not with a court-appointed attorney."

When Campbell expressed some confusion about why he may have to proceed pro se, the trial justice explained:

"Because this independent evaluation done by an objective attorney will have given me some guidance, and if they come back and say we do feel there is something to Mr. Campbell's claim, then I will appoint an attorney."

Significantly, the trial justice declared:

"This independent lawyer doesn't represent you or me. He is making this independent evaluation, and if he says, in my opinion, based on my evaluation, I don't think there is anything to claim, then you're still allowed to proceed with the claim, but I cannot appoint an attorney for you so you have to do it yourself."

The trial justice once more told Campbell that "[the appointed attorney] is not representing you. [He or she] is an independent person, not representing me either, the Court. [He or she] is a good, competent attorney that we ask to make this independent evaluation." Counsel then was appointed to conduct this "independent evaluation."

Meanwhile, Campbell filed two amendments to his application for postconviction relief. The first of these amendments assigned several additional errors to Campbell's trial counsel and added a second allegation of ineffective assistance of counsel on the part of his appellate counsel. The second filing put forth several allegations of attorney error arising out of the Family Court's waiver of jurisdiction over Campbell. Campbell contended that his Family Court counsel was ineffective in numerous respects, including the failure to seek this Court's review, by way of writ

- 4 -

of certiorari, of the Family Court's decision to waive jurisdiction.[4]

After his investigation of Campbell's arguments, appointed counsel detailed his findings in a memorandum that was submitted to the trial justice on September 16, 2005. Although all of Campbell's arguments except the allegation of ineffective assistance of counsel previously had been dismissed, appointed counsel addressed the merits of all six arguments Campbell raised in his original application. This memorandum, purportedly compiled in accordance with Shatney v. State, 755 A.2d 130 (R.I. 2000), concluded that none of Campbell's arguments had merit; appointed counsel moved to withdraw from the case.

A hearing was conducted in Superior Court on the same day the "no-merit" memorandum was filed. After reciting counsel's conclusion that all of Campbell's arguments were meritless, the trial justice informed Campbell that only his allegation of ineffective assistance of counsel could proceed to a hearing and that he had no right to be represented by an attorney. Campbell argued to the trial justice that he had met with appointed counsel only once—the week before the memorandum was filed. The trial justice again reminded Campbell that appointed counsel was "not here representing you, as I told you long ago. He represents the courts." The trial justice granted the motion to withdraw, stating that "[appointed counsel] is allowed to withdraw because he was representing the Court in the matter." Finally, with respect to the issue concerning the Family Court's waiver of jurisdiction, the trial justice suggested that the Superior Court did not have jurisdiction over any contention concerning the Family Court proceedings, declaring, "I don't have anything to do with the Family Court."

On November 18, 2005, a hearing was held on the remaining allegation of ineffective

---

[4] Campbell also alleged that the prosecutor introduced perjured testimony and that the Family Court justice made incorrect evidentiary rulings, overlooked perjured testimony, and entered erroneous findings of fact.

assistance of trial counsel. Because Campbell was not represented by counsel, that circumstance complicated the proceedings. Campbell explained to the trial justice that he was not ready to proceed because he needed a lawyer and that, based on his interpretation of the relevant postconviction-relief statute, he was entitled to court-appointed counsel. The trial justice disagreed with Campbell's interpretation and referred him to our decision in Shatney, which, the trial justice explained, "says that upon completion of a report in which the appointed attorney who does not represent you but who represents the Court comes back with a report of lack of merit, you are entitled to represent yourself at a hearing on the merits."

The state then moved to dismiss Campbell's application in its entirety, based on Campbell's unwillingness to proceed pro se. Over Campbell's objection, the trial justice granted the state's motion to dismiss. Campbell appeals.

### Standard of Review

The statutory remedy of postconviction relief under chapter 9.1 of title 10 is "available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice." Sosa v. State, 949 A.2d 1014, 1016 (R.I. 2008) (quoting Pierce v. Wall, 941 A.2d 189, 192 (R.I. 2008)). When reviewing the grant or denial of postconviction relief, this Court will uphold the trial justice's factual findings unless they were clearly erroneous or the trial justice "overlooked or misconceived material evidence or was otherwise clearly wrong." Id. (quoting Pierce, 941 A.2d at 192). Nonetheless, we review "questions of fact concerning infringement of constitutional rights, and mixed questions of law and fact with constitutional implications, de novo." Id.; see Pierce, 941 A.2d at 192. Additionally, we review questions of statutory interpretation de novo.

Reynolds v. Town of Jamestown, 45 A.3d 537, 541 (R.I. 2012). Finally, questions about a court's subject matter jurisdiction similarly receive de novo review. Ims v. Audette, 40 A.3d 236, 237 (R.I. 2012).

**Analysis**

The issues on appeal can be grouped into two categories. Campbell asserts that the trial justice's dismissal of his allegations did not comply with the requirements of the postconviction remedy because he was entitled to appointed counsel as well as a meaningful opportunity to reply prior to the proposed dismissal. Additionally, Campbell assigns error to the trial justice's ruling that the Superior Court was without jurisdiction to reach the question of the ineffective assistance of Family Court counsel. We address each of these contentions in turn.

**I**

**Appointment of Counsel**

The crux of Campbell's appeal is that the trial justice failed to appoint counsel to represent him in his application for postconviction relief. We begin by noting that the right to counsel in a postconviction-relief proceeding is a matter of legislative grace, not constitutional right. Because the postconviction remedy amounts to a collateral attack on a conviction, the action is civil in nature, for which there is no constitutional right to counsel. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Bryant v. Wall, 896 A.2d 704, 708 (R.I. 2006); Louro v. State, 740 A.2d 343, 344 n.1 (R.I. 1999). However, in recognition of an applicant's liberty interest in a postconviction-relief proceeding, the General Assembly has provided that:

> "An applicant who is indigent shall be entitled to be represented by the public defender. If the public defender is excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation, the court shall assign counsel to represent the applicant." Section 10-9.1-5 (emphases added).

Under the clear and unambiguous language of § 10-9.1-5, an indigent postconviction-relief applicant is entitled to be represented by the Public Defender in the first instance. Only when the Public Defender is "excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation" must the court "assign counsel to represent the applicant." Id. Thus, in any application for postconviction relief, § 10-9.1-5 anticipates that a member of the Public Defender's office shall represent the applicant or seek to be "excused from representing the applicant because of a conflict of interest or [the Public Defender] is otherwise unable to provide representation * * *." Id.

In cases in which the Superior Court excuses the Public Defender because a conflict exists, which frequently is the case, § 10-9.1-5 directs the court to appoint counsel "to represent the applicant." (Emphasis added.) The hallmarks of a meaningful attorney-client relationship thus arise, including zealous advocacy and the protection of the applicant's confidences. Section 10-9.1-5 cannot be satisfied with anything less than a meaningful attorney-client relationship between appointed counsel and his or her client. Nothing we said in Shatney diminishes this requirement.

In Shatney, we established a procedure by which an attorney, including a member of the Public Defender's Office, who has been appointed to represent an applicant for postconviction relief may later seek to withdraw from that representation under specific and limited circumstances:

> "[U]pon notice to the applicant, counsel for an applicant may request permission from the court to withdraw, based upon an assessment that the application has no arguable merit. To do so, however, appointed counsel must file with the court and serve upon the applicant a motion to withdraw accompanied by a 'no-merit' memorandum that details the nature and extent of his or her review of the case, lists each issue the applicant wished to raise, and explains why in counsel's professional opinion those issues

- 8 -

and any others that he or she may have investigated lacked merit."
<u>Shatney</u>, 755 A.2d at 135 (emphasis added).

The filing of this "no-merit" memorandum triggers a process that serves two interests. First, "[t]he court * * * must conduct a hearing with the applicant present." <u>Id.</u> Then,

> "[i]f, based upon its review of counsel's assessment of the potential grounds for seeking post-conviction relief and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant that he or she shall be required to proceed pro se, if he or she chooses to pursue the application." <u>Id.</u>

The procedure outlined in <u>Shatney</u> is consistent with Rule 11 of the Superior Court Rules of Civil Procedure, which applies in postconviction-relief proceedings. Rule 11 provides, in pertinent part, as follows:

> "Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name * * *. * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is <u>well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose</u>, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, any appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." (Emphasis added.)

The procedure set forth in <u>Shatney</u> simply applies Rule 11's proviso to the context of the postconviction remedy, such that an attorney—whether private counsel or a member of the Public Defender's Office—appointed to represent an indigent applicant may withdraw from that

representation when it becomes clear, after a reasonable investigation, that some or all of the applicant's claims lack merit. Without the ability to withdraw from a case in which the applicant persists in pursuing meritless claims, appointed counsel could be subject to Rule 11's sanctions. See Anderson v. State, 878 A.2d 1049, 1049 (R.I. 2005) (mem.) (applicant's appointed counsel submitted "no-merit" memorandum and requested "that the court discharge him from representing petitioner in that proceeding in order to avoid violating Rule 11 of the Superior Court Rules of Civil Procedure").

Neither Shatney nor its progeny contemplates the appointment of an "objective" or "independent" lawyer who does not represent the applicant. Generally, Shatney considerations should arise after counsel has been appointed in accordance with § 10-9.1-5 and the applicant has been provided with a meaningful discussion with counsel about the issues that may or may not be suitable grounds for postconviction relief. Properly understood, Shatney envisions a multistep process in postconviction-relief proceedings initiated by indigent applicants: first, referral to the Public Defender, who may be excused based on a conflict; if so, counsel is appointed to represent the applicant under § 10-9.1-5, followed by an investigation, which may or may not lead to a motion to withdraw and a "no-merit" memorandum in accordance with the procedure set forth in Shatney.[5]

Additionally, our post-Shatney decisions reflect that counsel had been appointed to represent the postconviction-relief applicant. See, e.g., Tassone v. State, 42 A.3d 1277, 1280 (R.I. 2012) ("A fourth attorney * * * entered his appearance for applicant on August 19, 2005,

---

[5] We recognize that some attorneys may be reluctant or decline to enter an appearance on behalf of an applicant unless he or she is satisfied that there exists one or more meritorious claims and that an applicant may agree to that conditional representation. However, such a circumstance is not embraced by the dictates of Shatney v. State, 755 A.2d 130 (R.I. 2000), and the fact that counsel may decline the appointment should not result in the summary dismissal of an applicant's claims absent compliance with § 10-9.1-5.

and that attorney represented him <u>throughout</u> the remainder of the Superior Court proceedings for postconviction relief." (Emphasis added.)); <u>State v. Laurence</u>, 18 A.3d 512, 523 (R.I. 2011) ("Ensuring that the applicant is allowed to speak to the professional opinion of <u>his</u> <u>Shatney</u> attorney at the hearing is a vital part of the process as it elucidates 'what grounds [the applicant] still might have or may have wished to pursue in that application.'" quoting <u>Shatney</u>, 755 A.2d at 133 (emphasis added)); <u>Otero v. State</u>, 996 A.2d 667, 671 (R.I. 2010) (referring to applicant and "<u>his</u> appointed attorney" (emphasis added)); <u>Thornton v. State</u>, 948 A.2d 312, 317 (R.I. 2008) (referring to "applicant and <u>his</u> court-appointed counsel" (emphasis added)); <u>Young v. State</u>, 877 A.2d 625, 627 (R.I. 2005) (attorney was appointed to represent the indigent postconviction-relief applicant, filed an amended application on the applicant's behalf, and only then submitted a "no-merit" memorandum pursuant to <u>Shatney</u>); <u>Brown v. State</u>, 841 A.2d 1116, 1123 (R.I. 2004) ("The <u>applicant's</u> court-appointed counsel complied with the <u>Shatney</u> procedures by filing a forty-page no-merit memorandum and discussing with the hearing justice the reasons he believed post-conviction relief was not warranted." (Emphasis added.)).

## Summary Dismissal

Notwithstanding § 10-9.1-5's directive that an applicant is "entitled to be represented by the public defender" or appointed counsel if the Public Defender is excused, it is well settled that summary dismissal of a meritless application is appropriate in certain circumstances under § 10-9.1-6(b). See <u>Sifuentes v. State</u>, 43 A.3d 49, 54 (R.I. 2012); <u>Sosa</u>, 949 A.2d at 1017. Section 10-9.1-6(b) provides:

> "When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply to the

- 11 -

proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if there exists a genuine issue of material fact."

We take this opportunity to declare that summary dismissal is appropriate when it is apparent that the applicant's claims are barred by res judicata. Section 10-9.1-8 "codifies the doctrine of res judicata as applied to petitions for post-conviction relief." Taylor v. Wall, 821 A.2d 685, 688 (R.I. 2003) (quoting State v. DeCiantis, 813 A.2d 986, 993 (R.I. 2003)); see also Price v. Wall, 31 A.3d 995, 999 & n.10 (R.I. 2011). Section 10-9.1-8 provides in pertinent part:

> "Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."

As we explained in Taylor, 821 A.2d at 688, "[r]es judicata bars the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them." See also Price, 31 A.3d at 999-1000. Accordingly, any claim barred by res judicata is subject to summary dismissal, "unless the court finds that in the interest of justice the applicant should be permitted" to pursue it. Section 10-9.1-8. These claims should be dismissed as soon as practicable.

However, as a prerequisite to any such dismissal, "an applicant must be provided with an 'opportunity to reply to the court's proposed dismissal.'" Sosa, 949 A.2d at 1017 (quoting Corners v. State, 922 A.2d 176, 176 (R.I. 2007) (mem.)). Moreover, the opportunity to do so must be meaningful. Harris v. State, 973 A.2d 618, 619 (R.I. 2009) (mem.); Mattatall v. State, 966 A.2d 125, 126 (R.I. 2009) (mem.). The applicant must be accorded a reasonable amount of

time to prepare a response to the court's proposed dismissal, "regardless of the merits" of the application. Mattatall, 966 A.2d at 126.

In this case, Campbell complains that the trial justice failed to observe the requirements of the postconviction remedy in two separate, but related, respects. First, Campbell insists that the trial justice erred in summarily dismissing five of his claims on April 1, 2005 without first providing him with appointed counsel and a meaningful opportunity to respond. Second, Campbell argues that trial justice's appointment of an "objective attorney" to make an "independent evaluation" of the merits of his claim of ineffective assistance of counsel violated § 10-9.1-5. We agree with these contentions.

### A. Summary Dismissal of Five of Campbell's Allegations

Campbell argues that during his first appearance before the trial justice, he was deprived of a meaningful opportunity to reply before the trial justice dismissed five of his allegations. Campbell contends that he was unable meaningfully to address the state's arguments in favor of dismissal because he did not have the assistance of counsel. The record discloses that the trial justice found that these arguments had been adjudicated by this Court in Campbell's direct appeal and summarily dismissed them. We deem this error.

Although this is the first time we have been called upon to determine whether the meaningful opportunity to reply as required by § 10-9.1-6(b) must include the appointment of counsel under § 10-9.1-5, we are not without guidance on this issue. In Shatney, 755 A.2d at 135, for example, we pronounced that the Superior Court was to follow the procedures employed in Pennsylvania for postconviction-relief applications. In setting forth these procedures, we quoted with approval multiple passages from the Pennsylvania Superior Court's decision in Commonwealth v. Harris, 553 A.2d 428 (Pa. Super. Ct. 1989), including the following: "The

point in time at which a trial court may determine that a * * * petitioner's claims are frivolous or meritless is <u>after</u> the petitioner has been afforded a full, fair, and <u>counselled</u> opportunity to present those claims." <u>Shatney</u>, 755 A.2d at 135 (quoting <u>Harris</u>, 553 A.2d at 433 (second emphasis added)). Similarly, in this Court's decision in <u>Harris</u>, 973 A.2d at 619, despite the indigent <u>pro se</u> postconviction-relief applicant's request for appointment of counsel, the trial justice summarily denied the application before appointing a lawyer. We held that the summary dismissal violated the applicant's rights to appointed counsel and an opportunity to reply to the dismissal. <u>Id.</u>; <u>see also</u> <u>O'Neil v. State</u>, 814 A.2d 366, 367 (R.I. 2002) (mem.) ("[T]he motion justice erred in not first appointing counsel for O'Neil before denying him post-conviction relief.").

In addition to being the most harmonious construction of §§ 10-9.1-5 and 10-9.1-6(b), requiring the appointment of counsel before an applicant's claims are dismissed not only ensures that the applicant is provided with a meaningful opportunity to reply, but also serves several laudable ends. We recognize that some applicants may need counsel's assistance in order to appreciate that principles of <u>res judicata</u>, as enshrined in § 10-9.1-8, require dismissal of some or all of their claims and prevent the relitigation of those contentions. Additionally, appointed counsel may, in an appropriate case, frame the applicant's claims in such a way as to avoid § 10-9.1-8's waiver rule, by alleging ineffective assistance of counsel or a showing of credible newly discovered evidence.

Finally, we are cognizant that the application for postconviction relief currently under review is Campbell's first for a murder conviction arising when he was seventeen years of age. Although not determinative, the fact that this is Campbell's first collateral attack—on a conviction for which he received a sentence of life imprisonment—is significant. We also

recognize the practical considerations that arise when trial justices are faced with multiple, duplicitous claims for postconviction relief by repeat applicants who fail to appreciate the finality inherent in the doctrine of res judicata.

Thus, the inquiry into whether an indigent postconviction-relief applicant is entitled to counsel and a hearing should focus, at least in part, on how many applications have been filed. See Harris, 973 A.2d at 619; Shatney, 755 A.2d at 134-35; Louro, 740 A.2d at 344; cf. Tassone, 42 A.3d at 1287 (where a majority held that "an evidentiary hearing is required in the first application for postconviction relief in all cases involving applicants sentenced to life without the possibility of parole." (Emphasis added.)). In Harris, 973 A.2d at 619, this Court explained that "an indigent applicant for postconviction relief has the right to appointed counsel for his or her first application for postconviction relief." (Emphasis added.) See also O'Neil, 814 A.2d at 367. In Louro, 740 A.2d at 344, we declared that an indigent applicant was not entitled to appointed counsel in his appeal from the dismissal of a successive application for postconviction relief. We concluded that it was not the intent of the General Assembly that postconviction-relief applicants would be entitled to have appointed counsel for appeals involving successive applications. Id.

In Shatney, we addressed the issue of repetitive attacks on a conviction and distinguished Louro on the basis that the applicant in Shatney had filed only one application for postconviction relief:

> "Some of the concerns underlying Louro, and similar cases from other jurisdictions restricting the right to counsel in post-conviction proceedings, are that repetitive, successive, piecemeal, or collateral attacks on judgments of conviction may tax the limited resources of the judicial system and constitute an abuse thereof. * * * These same concerns, however, do not exist in the present case, involving an initial application for post-conviction relief." Shatney, 755 A.2d at 134-35.

For these reasons, we hold that, in order to have a meaningful opportunity to reply prior

to summary dismissal under § 10-9.1-6(b), an indigent, first-time applicant for postconviction relief must be afforded counsel upon request.

In this case, Campbell was deprived of a meaningful opportunity to reply before five of his allegations summarily were dismissed. Campbell made several requests for counsel throughout the proceedings below. In his initial request, Campbell explained that, because he had no legal training or experience, he could neither properly frame the issues nor persuasively argue their merit. Although after hearing argument from the state on its motion to dismiss, the trial justice inquired whether Campbell wished to be heard, Campbell's <u>ad hoc</u> response demonstrates that this opportunity to reply was not meaningful; his answer was brief and revealed a fundamental misunderstanding of <u>res judicata</u> principles.[6] Campbell cannot be faulted for his inability to effectively respond to the state's contentions; it was for this very reason that Campbell vigorously requested appointment of counsel. Therefore, we agree with Campbell that the absence of appointed counsel before five of his allegations were dismissed deprived him of a meaningful opportunity to reply.

The state offers two grounds for affirming the summary dismissal of five of Campbell's

---

[6] After hearing argument from the state, the trial justice asked Campbell, "Do you wish to respond to any of that?" Campbell responded:

> "First of all, I would like to object to [the state's representative's] allegations and her opinions into my matters.

> "Before I filed my postconviction[-relief application], I made sure every issue was not adjudicated. I understand that is her contention, that that would be her contention in open court, but all of my issues I have raised were actually filed with the language being different from what was raised on appeal. Um, that is all I have to say in the matter."

This Court has made clear that "[an applicant] for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error." <u>Price v. Wall</u>, 31 A.3d 995, 999-1000 (R.I. 2011) (quoting <u>Overstreet v. State</u>, 877 N.E.2d 144, 150 n.2 (Ind. 2007)).

allegations. First, the state contends that because appointed counsel gratuitously addressed these five allegations in his "no-merit" memorandum, Campbell received that which the statute required. Second, the state argues that the trial justice properly concluded that all five of these allegations were barred by principles of res judicata. We reject these contentions.

The fact that appointed counsel ultimately addressed the dismissed allegations in his "no-merit" memorandum is irrelevant. An order had been entered dismissing these allegations months before appointed counsel filed his "no-merit" memorandum. Section 10-9.1-6(b) provides that "[t]he applicant shall be given an opportunity to reply to the proposed dismissal[,]" (emphasis added), and it clearly anticipates that the opportunity to reply must come prior to, and not after, the claims are dismissed.

With respect to the res judicata considerations, there appears to be merit to the state's argument that these claims are precluded. We briefly set forth the issues raised in these five allegations. Campbell first alleged that the DNA evidence admitted against him was unreliable. However, Campbell raised a nearly identical argument in his direct appeal. See Campbell, 691 A.2d at 571. We held that the trial justice did not err in admitting the evidence. Id. at 571-72. Therefore, it appears that this claim is barred by § 10-9.1-8.

Campbell next argued that the state's failure to preserve exculpatory photographs violated his due process rights under the United States and Rhode Island Constitutions. Campbell raised a similar argument in his direct appeal, contending that "the trial justice erred by refusing to pass the case because the misplaced evidence might have been of exculpatory value to defendant, and could have constituted a critical part of defendant's defense." Campbell, 691 A.2d at 569. We affirmed the trial justice's decision in Campbell based on the overwhelming evidence of Campbell's guilt and the absence of bad faith in the loss of the photographs. Id. at

- 17 -

569-70.  Thus, Campbell's second claim, a "ground finally adjudicated" in his direct appeal, also appears precluded.  Section 10-9.1-8.

Campbell's third, fourth, and fifth allegations—that a detective gave false testimony concerning Campbell's confession;  that the trial justice erroneously prohibited Campbell's defense counsel from cross-examining another detective; and that the evidence against Campbell was insufficient to support a conviction—were not decided by this Court in Campbell.  This circumstance does not, however, insulate these allegations from the waiver rule set forth in § 10-9.1-8.

Despite the fact that each of these claims may ultimately prove to be barred by res judicata, the state's insistence that they can be dismissed before counsel is appointed overlooks the purposes of §§ 10-9.1-5 and 10-9.1-6(b).  In Shatney, we quoted with approval the Pennsylvania court's decision in Harris:

> "[T]he mandatory appointment requirement is a salutary one and best comports with efficient judicial administration and serious consideration of a prisoner's claims.  Counsel's ability to frame the issues in a legally meaningful fashion insures the trial court that all relevant considerations will be brought to its attention * * *.  It is a waste of valuable judicial manpower and an inefficient method of seriously treating the substantive merits of applications for post-conviction relief to proceed without counsel for the applicants who have filed pro se * * *."  Shatney, 755 A.2d at 136 (quoting Harris, 553 A.2d at 433 (emphasis added).

In this case, Campbell was deprived of an opportunity to meet with a lawyer—who represented him—to discuss whether some or all of his allegations could survive summary dismissal.  Rather, the trial justice merely passed on Campbell's pro se pleading.  The postconviction remedy demands that an indigent, first-time applicant be afforded more: a meaningful opportunity to reply to the proposed dismissal, which includes, at a minimum, the

appointment of counsel under § 10-9.1-5.[7]  Although Campbell's allegations may prove to be inescapably barred by res judicata, he must be afforded a meaningful opportunity to reply prior to summary dismissal.  See Mattatall, 966 A.2d at 126 (holding that a meaningful opportunity to reply to the proposed dismissal was required "regardless of the merits" of a postconviction-relief application).

### B.  Appointment of Counsel

Turning to the appointment of counsel, we are of the opinion that the trial justice failed to comply with the mandate of § 10-9.1-5, which provides, in pertinent part, that "[i]f the public defender is excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation, the court shall assign counsel to represent the applicant."  (Emphasis added.)  Neither our holding in Shatney nor § 10-9.1-5 anticipates the appointment of an "objective attorney" to conduct an "independent evaluation" of the merits of an applicant's postconviction-relief application.   Rather, Campbell was entitled to the appointment of a lawyer to assist him in seeking the relief envisioned by the statute.

The trial justice notified Campbell that counsel would be appointed to represent him only if the attorney concluded that his allegations had merit.  Likewise, the trial justice reminded Campbell at the hearing on September 16, 2005 that appointed counsel was not representing him.  Finally, when, at the hearing on November 18, 2005, Campbell argued that he was entitled to

---

[7] Although neither party has brought it to our attention, we pause to note that our disposition of this case is in no way inconsistent with Ramirez v. State, 933 A.2d 1110, 1112 & n.4 (R.I. 2007), in which we affirmed the summary dismissal of the applicant's third application for postconviction relief, notwithstanding the absence of a meaningful opportunity to be heard, because "we agree[d] with the trial justice that G.L. 1956 § 10-9.1-8 precludes consideration of [the applicant's] third application for postconviction relief."  Not only was the application for postconviction relief under review in Ramirez the applicant's third, as opposed to the initial application at issue in this case, but also the applicant in Ramirez was provided the assistance of counsel on his third application.  See Ramirez, 933 A.2d at 1111.

appointed counsel under § 10-9.1-5, the trial justice disagreed and pointed to our opinion in Shatney, which, according to the trial justice, "says that upon completion of a report in which the appointed attorney who does not represent you but who represents the Court comes back with a report of lack of merit, you are entitled to represent yourself at a hearing on the merits." (Emphasis added.) At oral argument before this Court, the state conceded that Campbell was not provided with appointed counsel as required by § 10-9.1-5.

Finally, as discussed above, the fact that this is Campbell's first application for postconviction relief convinces us of the wisdom of limiting our holding to first-time applicants. Accordingly, we hold that an indigent, first-time applicant for postconviction relief is entitled to be represented in the first instance by the Public Defender, who shall meet with the applicant for a preliminary inquiry into the claim or claims which may form the basis of the requested relief. In cases in which the Public Defender "is excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation, the court shall assign counsel to represent the applicant." Section 10-9.1-5. When counsel—whether the Public Defender or appointed counsel—has been appointed, he or she may begin the process of investigating any claim or claims the applicant may have. If, after such an investigation, counsel deems it appropriate, he or she may seek to withdraw in accordance with the procedure set forth in Shatney. See Shatney, 755 A.2d at 135. Because Campbell, a first-time applicant, was denied counsel, we vacate the judgment and remand this case with directions to the Superior Court to appoint counsel to represent applicant.

**II**

Because this case is remanded to the Superior Court for proceedings in accordance with this opinion, we address the question of whether the trial justice erred in refusing to consider the

issues arising from the Family Court's waiver of jurisdiction over Campbell when he was seventeen years old.

Section 10-9.1-2(a) provides that "[a]n action to secure post conviction relief under this chapter shall be brought in the court in which the judgment of conviction was entered." In this case, the conviction was entered in the Superior Court, and the application for postconviction relief properly was filed in that tribunal.

To be sure, the alleged errors in the juvenile-waiver proceeding of which Campbell complains arose in the Family Court. Nonetheless, the Family Court proceedings were in aid of the Superior Court's jurisdiction over Campbell such that the waiver by the Family Court of jurisdiction under G.L. 1956 §§ 14-1-7(a) and 14-1-7.1 was a condition precedent to a trial in Superior Court. Therefore, Campbell's claims concerning his Family Court attorney properly were raised in the Superior Court—the court in which the judgment of conviction was entered. See § 10-9.1-2(a). Accordingly, it was error for the trial justice to conclude that he was without jurisdiction to hear these allegations.

We note that the state insists that these claims hopelessly are barred by res judicata and additionally are devoid of merit. Although these contentions ultimately may prove true, they are beside the point. Because Campbell never was afforded the counsel envisioned by § 10-9.1-5, any conclusion that these allegations are precluded or meritless would put the cart before the horse. We therefore express no opinion on these matters, which can be addressed only after Campbell receives the counsel to which he is statutorily entitled.

**Conclusion**

For the reasons articulated above, we vacate the judgment below and remand the case to the Superior Court with directions to appoint counsel in accordance with § 10-9.1-5 for investigation and, if appropriate, litigation of Campbell's allegations. The papers in this case are remanded to the Superior Court.


**TITLE OF CASE:**    Kyle Campbell v. State of Rhode Island.

**CASE NO:**    No. 2006-98-Appeal.
(PM 04-1512)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    December 12, 2012

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Francis J. Darigan, Jr.

**ATTORNEYS ON APPEAL:**

For Applicant:  George J. West, Esq.

For State:  Jane M. McSoley
Department of Attorney General