February 3, 2025

**Supreme Court**

No. 2022-150-M.P.
(PM 22-1285)
(PM 22-1290)

Charles Pona                    :

v.                              :

State of Rhode Island.          :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Charles Pona                    :

v.                              :

State of Rhode Island.          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  The petitioner, Charles Pona (Pona), seeks review of two orders of the Superior Court summarily dismissing his applications for postconviction relief from two murder convictions.  On May 31, 2023, we granted the petition for writ of certiorari and subsequently issued an order directing the parties to appear and show cause why the issues raised in this petition should not be summarily decided.  After considering the parties' written and oral submissions and carefully reviewing the record, we are of the opinion that cause has not been shown, and we proceed to decide the case at this time without further briefing or argument.  For the reasons set forth in this opinion, we quash the orders of the Superior Court.

- 1 -

## Facts

A detailed rendition of the facts underlying Pona's murder convictions can be found in this Court's decisions in *State v. Pona*, 926 A.2d 592 (R.I. 2007) (*Pona I*) and *State v. Pona*, 66 A.3d 454 (R.I. 2013) (*Pona II*). Therefore, we briefly recount the salient facts underlying those convictions here.

On March 3, 2000, Pona was indicted on charges of first-degree murder, carrying a pistol without a license, and attempted arson of a motor vehicle for the circumstances surrounding the killing of Hector Feliciano (Feliciano). Jennifer Rivera (Rivera), a fifteen-year-old who lived near where Feliciano was killed, told police that Rivera saw Pona running from the murder scene after Rivera heard gunshots. *Pona I*, 926 A.2d at 597. Rivera provided police with a formal statement, identified Pona in a photo array, and testified against Pona at his bail hearing. *Pona II*, 66 A.3d at 459. Rivera was ultimately subpoenaed to testify for the state at Pona's trial. *Id.*

On the eve of Pona's scheduled trial for the Feliciano murder, Pona orchestrated the execution-style murder of Rivera. *Pona II*, 66 A.3d at 460. Pona, while out of the Adult Correctional Institutions on bail, met in Providence, Rhode Island, with Dennard Walker (Walker) and Miguel Perez (Perez) in a car driven by Perez. *Id.* After spotting Rivera at her home and at Pona's direction, Walker exited the vehicle and shot Rivera multiple times. *Id.* Rivera died the next day from her

injuries. *Id.* Police used (1) statements by Perez implicating Pona and Walker, (2) secret jailhouse recordings of Walker admitting to his cellmate that Pona asked Walker to kill Rivera, and (3) an incriminating letter Pona authored to Perez to secure an indictment of Pona for Rivera's murder. *Id.*

On July 20, 2000, Pona was found guilty of first-degree murder, carrying a firearm without a license, and attempted arson of a motor vehicle for the Feliciano murder. *Pona I*, 926 A.2d at 599. He was sentenced to life in prison for the murder, plus a concurrent ten-year sentence for the firearm charge, and a consecutive twenty years with eight years to serve on the attempted arson charge. *Id.* This Court affirmed that conviction in 2007. *Id.* at 616.

Having previously been convicted of the Feliciano murder, Pona was found guilty of murder and other charges for the slaying of Rivera on November 12, 2003. However, on appeal, this Court overturned the conviction. *State v. Pona*, 948 A.2d 941, 954 (R.I. 2008). In that decision, we determined that the trial justice improperly allowed certain evidence related to the Feliciano murder, that portions of Rivera's testimony at Pona's bail hearing for the Feliciano murder should have been excluded, and that a witness's disclosure that Pona had previously purchased crack cocaine from the witness should have resulted in a mistrial. *Id.* at 951-54.

After a retrial, Pona was convicted of Rivera's murder on April 20, 2010. He was sentenced to life in prison to be served consecutively with his sentence for the

Feliciano murder plus an additional ten consecutive years for other charges stemming from Rivera's murder. *Pona II*, 66 A.3d at 465. We affirmed this conviction on May 23, 2013. *Id.* at 477.

Pona submitted applications for postconviction relief on both of his murder cases. The applications, submitted with a form entering Pona's appearance *pro se*, alleged that the Superior Court fraudulently obtained jurisdiction over Pona during his arraignment, transforming him from a natural person into an artificial person. The state submitted a boilerplate answer to both applications, in which it largely neither admitted nor denied Pona's allegations surrounding purported fraud committed against Pona and asserted the affirmative defenses of laches and *res judicata*. On April 11, 2022, the hearing justice issued a notice of intention to dismiss the applications pursuant to G.L. 1956 § 10-9.1-6, pending a response from Pona based on § 10-9.1-6(b). The notice stated that applicant's "asseverations" were "specious on their face * * *."

On May 2, 2022, Pona filed a response that repeated the same contention from his applications that had Pona

> "been given full disclosure that by entering a plea before the statutory court [Pona's] fundamental rights as a natural person human being not in official capacity, would be waived and or extinguished by operation of the statutory laws involved, in taking upon himself the roll [*sic*] of the artificial person defined at R.I.G.L. § 43-3-6 he [Pona] would not have denied his natural existence as he understands his person created in God [*sic*] image."

- 4 -

The hearing justice did not hold a hearing on the matter, but instead issued an order dismissing the applications on May 4, 2022, concluding that Pona's "strange contentions" were "entirely devoid of any basis or ground upon which to seek postconviction relief." The hearing justice also noted that Pona did not request an attorney and that he entered his appearances *pro se* on both applications. On May 16, 2022, Pona filed a petition for a writ of certiorari in this Court that included a request for the appointment of counsel. Thereafter, the Office of the Public Defender entered its appearance on Pona's behalf. This Court granted the petition for a writ of certiorari and subsequently issued an order to show cause why this case should not be summarily decided.

## Standard of Review

"The postconviction remedy, set forth in § 10-9.1-1, provides that one who has been convicted of a crime may seek collateral review of that conviction based on alleged violations of his or her constitutional rights." *Neves v. State*, 316 A.3d 1197, 1206 (R.I. 2024) (quoting *Brown v. State*, 32 A.3d 901, 907 (R.I. 2011)). The party seeking this relief retains "the burden of proving, by a preponderance of the evidence, that such relief is warranted." *Id.* (deletion omitted) (quoting *Brown*, 32 A.3d at 907). We review "*de novo* any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Id.* (quoting *Brown*, 32 A.3d at 908). This

Court examines questions of statutory interpretation *de novo*. *Campbell v. State*, 56 A.3d 448, 454 (R.I. 2012).

**Analysis**

Pona argues that he was denied his statutory right to counsel as a first-time applicant for postconviction relief under § 10-9.1-5. Pona contends that the word "shall" in the statute necessarily dictates that he should have been appointed counsel before his applications were summarily dismissed. Pona further states that he had no opportunity to request counsel because his applications were dismissed hastily without a hearing. He avers that his initial *pro se* filings did not relinquish his right to have an attorney appointed to represent him. Pona contends, therefore, that he was denied meaningful review of his applications.

Moreover, Pona asserts that he was improperly denied his right to a hearing before his applications were summarily dismissed. He maintains that an opportunity to be heard includes the assistance of counsel, which would have placed him in a better position to respond to the hearing justice's notice of intent to dismiss his applications.

In response, the state advances that Pona's claim lacked substantive merit. The state contends that Pona's statutory rights were not violated because he did not request an attorney and no legal support exists suggesting that an attorney must be appointed for a first-time postconviction-relief applicant who does not request one.

The state argues that, unlike *Campbell v. State*, 56 A.3d 448 (R.I. 2012), where an indigent, first-time applicant specifically requested counsel, here Pona never requested the appointment of counsel. The state continues that Pona's assertion that he never had the opportunity to ask for counsel did not violate the statute given that Pona had numerous opportunities to do so. The state concludes that the hearing justice's notice of intent to dismiss gave Pona ample notice that he would not be permitted to request an attorney at a later date.

"It is well-settled that in construing statutes 'our ultimate goal is to give effect to the General Assembly's intent.'" *Providence Place Group Limited, Partnership v. State by and through Division of Taxation*, 266 A.3d 1231, 1235 (R.I. 2022) (brackets omitted) (quoting *Mutual Development Corporation v. Ward Fisher & Company, LLP*, 47 A.3d 319, 328 (R.I. 2012)). We look to the plain language of the statute to discern such intent. *Id.* "Thus, if the language of a statute is clear and unambiguous, 'this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *Id.* (quoting *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014)).

According to § 10-9.1-5, an applicant for postconviction relief "who is indigent shall be entitled to be represented by the public defender. If the public defender is excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation, the court shall assign counsel to

- 7 -

represent the applicant." Section 10-9.1-5. Further, "[w]hen a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reason for so doing." Section 10-9.1-6(b). This portion of the statute also provides that "[t]he applicant shall be given an opportunity to reply to the proposed dismissal." *Id.* "Dismissal under § 10-9.1-6(b) is akin to a dismissal under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure and is subject to the same standard." *Hernandez v. State*, 196 A.3d 286, 290 (R.I. 2018) (quoting *Reyes v. State*, 141 A.3d 644, 652 (R.I. 2016)).

Both parties center their submissions on our holding in *Campbell*. In *Campbell*, this Court confronted whether "an opportunity to reply" to a notice of intent to summarily dismiss an application under § 10-9.1-6(b) included the appointment of counsel. *Campbell*, 56 A.3d at 458. There, we stated, "requiring the appointment of counsel before an applicant's claims are dismissed not only ensures that the applicant is provided with a meaningful opportunity to reply, but also serves several laudable ends." *Id.* The parties appear to agree that, as stated in *Campbell*, "an indigent postconviction-relief applicant is entitled to be represented by the Public Defender in the first instance." *Id.* at 454. Where the parties disagree, however, is whether an indigent, first-time applicant for postconviction relief is

entitled to counsel only "upon request." *Id.* at 459.

Here, Pona did not specifically request counsel; instead he entered his appearance *pro se*. The question before us is whether or not that constitutes a waiver of his right to counsel. *Bryant v. Wall*, 896 A.2d 704 (R.I. 2006), is illuminating relative to this issue. In *Bryant*, we noted that "a person's liberty interest is ultimately at stake, and the right to counsel in such proceedings arises by virtue of statute." *Bryant*, 896 A.2d at 708. Additionally, in criminal cases "we have explained that a defendant may waive his right to counsel if the waiver is 'given voluntarily, knowingly, and intelligently.'" *Id.* at 708-09 (quoting *State v. Holdsworth*, 798 A.2d 917, 923 (R.I. 2002)). Waiver is evaluated by examining the totality of the circumstances. *Id.* at 709. In *Bryant*, the hearing justice engaged in a colloquy, on the record, with the applicant, wherein the applicant twice declined counsel, stating, "I don't want one, sir" and "I would like to continue on my own." *Id.*

Here, we are confronted with an indigent, first-time postconviction-relief applicant,[1] where the applications were dismissed without a hearing. The gravamen of our holding in *Campbell* was that counsel must be appointed prior to summary dismissal of even a seemingly meritless application. *Campbell*, 56 A.3d at 458-61.

---

[1] We pause to note that Pona has previously filed an application for postconviction relief on one of his murder convictions, P1/02-2571AG. *See* PM 13-4691. Pona later withdrew the application before his claims were addressed on the merits.

As we stated in *Campbell*, "[§] 10-9.1-5 cannot be satisfied with anything less than a meaningful attorney-client relationship between appointed counsel and his or her client." *Id.* at 455. In the instant case, while we acknowledge that Pona did not request counsel in his applications or his response to the notice of intent to dismiss his claims, no hearing was conducted to verify that Pona intended to proceed *pro se* or gauge whether his waiver of his statutory right to counsel was knowing, voluntary, and intelligent. *See Bryant*, 896 A.2d at 709.

Pona should have been presented to the Superior Court to determine whether it was his intention to proceed *pro se*, and if that decision was knowing, intelligent, and voluntary. *See Bryant*, 896 A.2d at 708-09. To be clear, § 10-9.1-6(b) does not require a hearing for summary dismissal; however, a hearing justice must ensure that an applicant's waiver of their right to counsel is knowing, intelligent, and voluntary. *See id.* Accordingly, we quash the Superior Court's orders with instructions to conduct a hearing on whether Pona intends to proceed *pro se*, and, if so, whether that decision was made knowingly, voluntarily, and intelligently.

## Conclusion

For the reasons set forth herein, we quash the orders of the Superior Court. The record will be returned to the Superior Court with our decision endorsed thereon.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Charles Pona v. State of Rhode Island. |
| **Case Number** | No. 2022-150-M.P.<br>(PM 22-1285)<br>(PM 22-1290) |
| **Date Opinion Filed** | February 3, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Christopher R. Bush<br>Department of Attorney General<br><br>For Petitioner:<br><br>Camille A. McKenna<br>Rhode Island Public Defender |