**STATE**

**v.**

**Louis W. DUNN.**

**No. 97–414–M.P.**

Supreme Court of Rhode Island.

March 22, 1999.

Jane M. McSoley, David D. Prior, Aaron L. Weisman, Providence, for Plaintiff.

C. O'Brien, Jr., Thomas G. Briody, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

# OPINION

BOURCIER, Justice.

Before us in this proceeding is the state's petition for certiorari. In it, we are called upon to review the granting of the defendant's motion for a new trial following his conviction on a charge of first degree sexual assault after a Superior Court jury waived trial.

The defendant, Louis W. Dunn (Dunn), is an ordained Catholic priest. He was indicted on March 27, 1996 by a state grand jury and charged with one count of rape and a second count charging a first degree sexual assault. Each charge concerned a different young woman. The first charge of rape upon Lucille Farr (Farr) was alleged to have taken place between February 15 and June 15, 1965.[1] The second charge of first degree sexual assault was alleged to have taken place on June 7, 1982 and involved Mary Sheehan Ryan (Ryan). Dunn retained Attorney Bruce Vealey (Vealey) as his private counsel to represent him on the indictment charges. Vealey had also been earlier retained by Dunn to represent him in various pending civil actions that had been brought against Dunn and which concerned the same conduct as related in the criminal indictment.

On motion by defense counsel pursuant to Rule 14 of the Superior Court Rules of Criminal Procedure, the two indictment charges were severed to be tried separately. The charge concerning Farr was assigned to be first tried and the charge concerning Ryan was scheduled to be tried immediately following the completion of the Farr trial.

In June of 1997, Dunn's trial on the charge of rape involving Farr began before a Superior Court trial jury. Upon the completion of the state's case, the trial justice granted the defendant's motion for judgment of acquittal for reason of the state's failure to present sufficient evidence to prove that Dunn's intercourse with Farr had been anything but consensual.

The second indictment charge of first degree sexual assault alleged to have been committed on June 7, 1982 upon Ryan was thereafter reached for trial before the same trial justice who had presided at Dunn's earlier jury trial and who had favorably ruled in that case on Dunn's motion for judgment of acquittal. The defendant Dunn, prior to the commencement of his second trial, however, for reasons best known to Dunn and his attorney, decided and elected to waive his right to be tried by a jury, choosing instead to be tried by the trial justice sitting without a jury. The trial justice, after inquiring directly of Dunn about whether he had discussed "thoroughly" the question of waiver of jury trial with his trial counsel, and after having been assured by Dunn that such had been done, specifically found that Dunn's waiver was both intelligently and voluntarily made and permitted Dunn to waive his right to a jury trial. Trial then commenced on June 23, 1997, before the trial justice sitting without a jury. For purposes of this opinion, we deem it unnecessary to relate all of the sordid trial evidence, but briefly note that during the course of that trial, Ryan testified that commencing in October of 1978 when she was seventeen years of age and continuing thereafter until 1982, the defendant Dunn engaged with her in sexual activities that were consensual and involved digital penetration and oral sex "on an average of five times a week." She testified that she was induced into those, as well as other ithyphallic activities with Dunn, in part because of her love for him and because of his reciprocal professions of his love for her.[2]

---

1. The charge against Lucille Farr is referred to as "rape" because at the time the crime allegedly occurred the common law rape statute was still in effect, G.L.1956 § 11–37–1. That statute was repealed by P.L.1979, ch. 302, § 1 and replaced with the current § 11–37–1.

2. As one example of the manipulative inducement technique employed by Dunn to gain Ryan's total confidence and cooperation in his illicit endeavors, Ryan testified that Dunn on one

occasion when she resisted his sexual advances while she rested in his bedroom at the church rectory, "pulled out his Bible and started reading from the Song of Songs" and "told [her] that God told him that he had never been able to be loved by a woman, and God sent me to him as a gift, and that I had to * * * it was like my obligation and responsibility, and he kept reading * * * and I just, I think I just kind of died, and he told me he had difficulty with his sexuality, that he used to read the Hustler magazines all the time, and he felt so sinful, and he used to go

With particular reference to the June 7, 1982 charge of first degree sexual assault, Ryan testified in detail that Dunn came to her apartment on that day and after sharing alcoholic drinks, he then led her into her bedroom, disrobed her, and insisted that he had to be the first man "inside" of her. Ryan testified that she refused to have intercourse with him but that he persisted and despite her resistance, he forcefully succeeded in opening her legs and after a brief struggle was able to penetrate her vagina with his penis. She testified that she was left crying, confused, and upset. She further testified that while she and Dunn thereafter continued to be friendly, there was no further sexual activity that took place between them.

At trial, four witnesses, including Ryan, testified for the state. The defendant, in his defense, presented three witnesses who testified. Dunn did not testify. The trial justice, upon completion of counsels' closing arguments, then immediately rendered a bench decision. He prefaced his decision by noting:

> "Before beginning my legal analysis, let me commend the attorneys on both sides for a professional and noninflammatory presentation of a difficult case."

He thereafter carefully reviewed all of the trial evidence. He specifically found Ryan's testimony, as well as that of the other state's witnesses, to be not only totally credible but also to have been given with "considerable dignity, candor, and restraint." He noted that "[w]ere there some plot afoot to railroad an innocent man there would not be the forthrightness and honesty these people brought into this courtroom." He concluded by finding that the state's evidence against Dunn had proven beyond a reasonable doubt that Dunn had committed the first degree sexual assault charged in count 2 of the indictment.

## I

### The New Trial Motion

Following his trial and conviction, the defendant filed a timely motion for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. He alleged therein that the trial justice's finding of guilt was "against the law, against the evidence, and against the law and the evidence and the weight thereof." Shortly following receipt of the defendant's motion for new trial, the trial justice, on July 28, 1997, summoned defense counsel and the state prosecutor to his chambers. During the course of that meeting, he informed counsel that he had received some eighty or ninety letters with regard to the defendant's conviction. Some of those letters, he informed counsel, requested him to impose a severe sentence, others requested leniency, and others expressed disbelief that the defendant, because of his peaceful nature, could have exerted any force against Ryan and that, therefore, he could not have sexually assaulted her against her will. Influenced by those letters, the trial justice unexpectedly then raised his concern with regard to defense counsel Vealey's lack of experience in trying criminal felony cases and his effectiveness in pretrial investigation efforts on behalf of the defendant. The letters he had received, he said, disclosed to him a "treasure trove" of information regarding Dunn's character that he believed should have been explored by defense counsel prior to trial and which, if done, might have provided character witnesses that could have been called to testify in Dunn's favor at his trial. Because of those concerns he scheduled a second conference for August 5, 1997 and suggested that the defendant be represented by new counsel. At that August 5 meeting, Attorney David Martin appeared to represent the defendant and Attorney Stephen R. Famiglietti appeared to represent Attorney Vealey. A record was made of both conferences. Our review of the record made of the trial justice's chamber conferences with counsel discloses to us that Vealey responded to each of the trial justice's sua sponte concerns with most plausible explanations. He explained why, as part of his defense trial strategy, he had decided not to present any character witness testimony. He informed the trial

---

to the Rustic Drive–In in the summer * * * and he talked about his testicles and how he only had one testicle, and he wasnt—you know, he wasnt a man—he never felt like he was a man, a whole man because of this, and I was the—I was there because God wanted me to teach him that he could be loved by a woman, I was there to heal him and I believed him."

justice that he was totally aware from pretrial discovery materials received by him in the course of his representation of Dunn in the pending civil actions against Dunn, that the state could have responded with a virtual avalanche of witnesses, all of whom would have been hostile to Dunn and who would have totally rebutted any attempt on his part to prove that Dunn was incapable of having used force in committing the first degree sexual act against Ryan.

Despite what we perceive from the conference record to have been most reasonable and plausible responses to the trial justice's concerns, however, it appears that Vealey was unable to assuage the trial justice's apparent mind-set concerning what the trial justice believed Vealey should have done in both preparing for and representing Dunn during his trial. We draw that conclusion from the record of the hearing that was held shortly thereafter on the defendant's motion for a new trial. At that hearing, Dunn's new counsel, David Martin (Martin), an experienced and competent defense attorney, at no time ever suggested in argument to the trial justice in support of the new trial motion, that Dunn had ever complained of any dissatisfaction with Vealey's representation, nor that Dunn was making any claim for a new trial on the basis of any ineffective assistance on the part of his trial counsel. In fact, the record of Martin's remarks to the trial justice in support of Dunn's motion for new trial were all based on an "interest of justice" theme, suggesting that the conviction was based only upon Ryan's testimony, which he suggested was incredible. Martin never once during his argument ever mentioned the words "ineffective assistance of counsel."[3] In that connection, we note from that record that the trial justice himself never once wavered in or ever retreated from his earlier specific trial finding that Ryan's trial testimony as to what Dunn had committed against her on June 7, 1982 was anything but totally credible, as was the testimony of each of the other state's witnesses. The trial justice, we also note, never opined that his earlier finding concerning the victim's credibility would have been affected or changed by any of the alleged character evidence that he believed he had gleaned from the post-trial letters.

We need not take up and consider other errors alleged to have been made by the trial justice and asserted by the state in support of its petition. We have digressed somewhat to this point and prior to taking up and addressing what we conclude to have been dispositive case error on the part of the trial justice. We have done so only for purposes of hopefully eradicating the unfortunate questioning of Attorney Vealey's professional integrity and competence by the trial justice. Attorney Vealey's reputation as an outstanding member of our state bar, a thoroughly competent trial attorney, and student of the law, is well known to us. We, unlike the trial justice, do not find in the record before us anything that would cause us to believe otherwise.

We address now the trial justice's granting of the defendant Dunn's motion for new trial for reason of ineffective assistance of trial counsel.

The defendant in this case, at no time, either in his motion for a new trial or at the hearing later held thereon, ever complained of or questioned the adequacy, effectiveness at trial, or competence of his privately retained defense counsel Vealey. The burden of proving any such allegation of ineffective assistance of counsel would have been upon the defendant. *State v. D'Alo*, 477 A.2d 89, 91 (R.I.1984); *State v. Ambrosino*, 114 R.I. 99, 106, 329 A.2d 398, 402 (1974); *State v. Desroches*, 110 R.I. 497, 501, 293 A.2d 913, 916 (1972). That issue, serving as the basis for the trial justice's decision to grant the new trial motion was raised sua sponte by the trial justice. He did so not based upon anything that he had himself

---

**3.** The record also discloses that at no time prior to the hearing held on the defendant's motion for new trial did successor defense counsel David Martin ever move to amend the original motion filed by trial attorney Vealey so as to allege and raise any ineffective assistance of counsel ground for relief. The obvious reason for that inaction we believe to be Attorney Martin's correct and proper recognition of our earlier case holdings declaring that the question of ineffective assistance of trial counsel is one that a convicted defendant can properly raise only in post-conviction proceedings pursuant to G.L.1956 § 10-9.1-1.

observed of defense counsel's performance at trial, but instead did so solely upon the basis of what he had read in the post-trial letters received by him from unknown persons following the defendant's conviction. The trial justice, on only that unverified and unreliable type of information, should have refrained from injecting himself into what was then clearly an adversarial proceeding before him, and from assuming for himself a position and burden of proof that rightfully belonged only to the defendant Dunn.

██ The trial justice in this case in so acting and ruling was clearly wrong. This Supreme Court has repeatedly held in past opinions that ineffective assistance of counsel claims "are considered only in an application for post conviction relief" filed pursuant to G.L.1956 § 10–9.1–1. *State v. Malstrom*, 672 A.2d 448, 450 (R.I.1996). *See State v. Gatone*, 698 A.2d 230, 242 (R.I.1997); *see also State v. Heath*, 665 A.2d 1336, 1338 (R.I.1995) (list of cases).[4]

██ Additionally, we note that Rule 33 of the Superior Court Rules of Criminal Procedure does not authorize a trial justice following a jury-waived criminal trial to grant a new trial. Rule 33 permits only that a trial justice on motion by the defendant "may vacate the judgment * * * take additional testimony and direct the entry of a new judgment." The defendant's motion, however, must in the first instance set out the particular grounds upon which the defendant seeks relief and upon which he requests the trial justice to vacate the previous judgment. Super.R.Crim.P. 47. Accordingly, a trial justice, when passing upon such a motion, may only proceed to act upon and consider the reasons for vacating judgment that are properly advanced in the new trial motion. Rules 33 and 47 clearly serve to preclude a trial justice from sua sponte raising and considering his or her own grounds for vacating a previous judgment. When a trial justice does so, he or she then effectively transforms what had previously been the defendant's motion for new trial into the trial justice's motion for a new trial and serves then to preclude the trial justice from ruling upon his or her own motion. That, unfortunately, took place in this case. In so doing, the trial justice clearly erred in considering and ruling upon a motion that was no longer truly that of the defendant as required by Rules 33 and 47. *See* Neal R. Pandozzi, *Reversal of Fortunato: Textualism Un–Dunn in State v. Dunn*, 3 Roger Williams L.Rev. 253 (1998).

Accordingly, for all the foregoing reasons, the state's petition for certiorari is granted. The order entered granting the defendant's motion for a new trial is quashed, and the papers in this case are remanded to the Superior Court for sentencing upon the judgment of conviction previously entered.

4. We note also that rarely, if ever, following conviction has any federal or state court permitted a defendant who has been represented by private counsel to later question, in post-conviction proceedings, the ineffectiveness or inefficiency of the trial counsel that the defendant chose and selected to represent him or her at trial. The "incompetency (or one of its many synonyms) of private counsel for the defendant in a criminal prosecution is neither a denial of due process under the Fourteenth Amendment, nor an infringement of the right to be represented by counsel under either the federal or state constitution, unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice, in which case the judgment, violating either the Fifth, Sixth, or Fourteenth Amendment to the Federal Constitution, or a provision of a state constitution, is void." Annotation, *Incompetency of Counsel*, 74 A.L.R.2d 1390, 1397 (1960).

Nothing even remotely approaching that manner of representation by Attorney Vealey was ever suggested by either the trial justice in this case or by Attorney Martin who represented the defendant at the hearing held on the motion for new trial. As a matter of record, the trial justice had prefaced his decision following the defendant's trial by complementing defense counsel Vealey for the "professional" manner in which he had conducted the defendant's defense.