OPINION
Justice INDEGLIA,
for the Court.
The applicant, Pedro Reyes (Reyes or applicant), appeals from the denial of his postconviction-relief application.[1] It is Reyes’s contention that his 1994 plea of nolo contendere to the offense of maintaining a narcotics nuisance should be vacated because the plea was not knowing, intelligent, and voluntary. He also argues that the hearing justice erroneously entered judgment for the state on his claims of ineffective assistance of counsel, that the hearing justice failed to consider other arguments, and that the attorney appointed in connection with his application failed to fulfill his assigned role. This case came before the Supreme Court for oral argument on December 1, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.
I
Facts and Travel
In October 1993, the Attorney General’s Narcotics Strike Force (strike force) was conducting an investigation into heroin trafficking in an area near Central Falls High School. On October 5, 1993, Investigator Carl Barovier (Barovier), a member of the strike force, approached Jose Romero (Romero) to purchase heroin.[2] Romero entered Barovier’s vehicle, and the two drove to the vicinity of Central Falls High School. After Barovier parked his vehicle, Romero exited and approached Ismael Cepeda (Cepeda).[3] The two conversed *648 briefly, and -then’Cepeda entered a brown Datsun vehicle that was driven by-another male. The vehicle drove off, returning about ten minutes later. Cepeda exited the vehicle and gave Barovier five bags containing heroin.- Barovier relayed his description of; the driver of the Datsun to Inspector Edward H. Randall (Randall); Randall' showed Barovier a photograph of Reyes, and Barovier identified Reyes as the driver of the Datsun. Reyes was charged, along with Cepeda and Romero, with conspiracy to distribute heroin within three hundred yards of a school (count 1) and distribution of heroin within three hundred yards of a school (count 2)..
Reyes was represented with respect to these charges by- privately retained counsel (trial counsel). Eventually, the state dismissed count 2 in accordance with Rule 48(a) of the Superior Court Rules of Criminal Procedure in exchange for Reyes’s plea of nolo contendere on count 1 to an amended charge of maintaining a narcotics nuisance. The Superior Court file contains two plea forms executed by Reyes, one in English and the other in Spanish. At the change-of-plea hearing on October 4, 1994, no Spanish interpreter was present, but the record does not indicate that either trial counsel or Reyes requested the assistance of ah interpreter. During-the plea colloquy, Reyes was able to respond, in English, to the trial justice’s questions.[4] Reyes provided his name - and date of birth, and he indicated that he wished to change his plea even before trial counsel responded to that question from the- trial justice. Reyes stated that he understood that, by pleading nolo contendere, he was forfeiting several constitutional rights, and, when asked whether he had any questions about those rights, he responded that he did not. After the prosecutor provided the facts in support of the amended charge, Reyes accepted those facts as true. The trial justice found that Reyes “does have the'capacity to understand the nature and consequences of his plea including but not limited to the waiver of those rights which I have reviewed with him” and that there was a sufficient factual basis for a plea of nolo contendere. He therefore accepted Reyes’s plea and sentenced him to a two-year suspended sentence with three years of probation. In consideration of Reyes’s plea, the state elected to refrain from presenting Reyes as a violator of a previously imposed probationary sentence.
Time marched on, and Reyes did not reform his behavior. He subsequently was adjudged to be a probation violator and served a period of incarceration as a result. Additionally, in 2002, he was convicted of second-degree murder, discharging a firearm during the commission of a crime of violence that resulted in death, and’ carrying a pistol without a licénse. See State v. Reyes, 984 A.2d 606, 609, 612 (R.I.2009).[5] For those charges, Reyes was sentenced to two consecutive life sentences. Id. The state also sought the imposition of an additional sentence on the ground that Reyes was a habitual offender under G.L.1956 § 12-19-21. The conviction secured by the 1994 nolo contendere plea was one of the predicate offenses that qualified Reyes as a-habitual offender. Reyes received a ten-year sentence on the habitual-offender *649 charge, to be served concurrently with his second life sentence.
In September 2(312, Reyes filed a pro se application, in which he sought to vacate his 1994 nolo contendere plea.[6] The application set forth several allegations of ineffective assistance by trial counsel, which fell into two general categories: failure to adequately investigate the case and prepare, a defense; and failure to communicate with Reyes through an interpreter so that Reyes could meaningfully participate in the preparation of his defense, even though, according to Reyes, trial counsel knew that he “barely spoke English.” With respect to the failure-to-investigate category, Reyes averred that his codefen-dants in the proceedings that culminated in his 1994 plea “exonerated [Reyes] at a bail hearing,” but trial counsel failed to interview these witnesses. One of the paramount allegations in the second category — lack of communication — was that, because trial counsel failed to engage a translator, he was unable to adequately inform Reyes about the nature and consequences of his plea. In addition to his ineffectiveness claims, Reyes also alleged, citing Boykin v. Alabama, 395 U.S. 238, 89 5.Ct. 1709, 23 L.Ed.2d 274 (1969), that the trial justice erred in accepting his plea because (i) Reyes did not understand the nature of the amended charge, (ii) the trial justice overlooked the exculpatory statements of Reyes’s codefendants, and (iii) the lack of factual basis, for the plea. In addition to his application, Reyes also filed a motion for appointment of counsel as an indigent applicant under G.L.1956 § 10-9.1-5.
' Iii accordance with § 10-9.1-5, the hearing justice first referred the matter to the Office of the Public Defender. Because a conflict of interest precluded a member of that office from representing Reyes, an attorney (postconviction counsel) was appointed to represent Reyes in connection with his application. In connection with his investigation, postconviction counsel met with Reyes on four occasions; he did‘not, however, speak with trial counsel. Postconviction counsel also searched for transcripts or recordings of the allegedly exculpatory bail-hearing testimony" that Reyes claimed was given by his codefendants. Postconviction counsel’s search revealed that the bail hearing was continued twice with no testimony; the records for the third and final day of the bail hearing revealed that,, once again, no witnesses'¡testified and that the defendants had admitted- that the :state had satisfied its burden of showing‘that bail was not appropriate. This search led postconviction counsel to conclude that the allegedly exculpatory bail-hearing testimony did not exist. Because postconviction counsel’s investigation -of Reyes’s claims led him to the conclusion that-Reyes’s postconviction claims lacked merit, he moved to withdraw and filed .an accompanying forty-two-page no-merit memorandum- explaining the reasons behind that conclusion, in accordance with the procedure outlined by this Court in Shatney v. State, 755 A.2d 130 (R.I.2000).[7]
*650 During the hearing on ppstconviction counsel’s motion to withdraw, Reyes stated that he had read the no-merit memorandum and had no difficulty understanding its contents. Reyes acknowledged that the memorandum discussed all of the issues that he sought to raise in his application.[8] When Reyes cryptically alluded to a letter from postconviction counsel tq Reyes that, according to Reyes, indicated that postcon-viction counsel represented the state and not Reyes, the hearing justice properly assured Reyes that postconviction counsel was his attorney. Reyes objected to the motion to withdraw on the grounds that postconviction counsel failed to hire an interpreter or an investigator and that he failed to interview trial counsel in connection with his investigation. Postconviction counsel responded that he did not deem an interview with trial counsel to be necessary or appropriate based on his conclusion that Reyes knowingly and voluntarily entered into his plea in 1994. Postconviction counsel also explained that he did not think that an interpreter was necessary during his meetings with Reyes because Reyes had taken English classes while incarcerated and his proficiency with the English language allowed adequate communication between them. Postconviction counsel professed to having “absolutely no problems communicating with [Reyes] at all.”
The hearing justice granted the motion to withdraw and explained to Reyes that he could still proceed pro se on his application or retain another attorney at his own expense. Additionally, she gave Reyes approximately six weeks to submit a memorandum outlining why he was entitled to postconviction relief. She also notified *651 him, in accordance with § 10-9.1-6, that she was inclined to dismiss his application on the merits unless he came forward with “something of great significance * * * that persuades the [c]ourt that [he] would have gone to trial” on the 1994 charges. During the hearing, Reyes filed a pro se motion for funds to hire a private investigator to track down his codefendants from the 1994 case. The hearing justice denied the motion, concluding that the private investigator’s efforts would reach the same conclusion that postconviction counsel had reached after his search for the bail-hearing testimony.
At the next hearing, Reyes provided a witness statement from Cepeda (Cepeda statement), one of his codefendants in the 1994 case.[9] In that statement, which was taken over the telephone by a private investigator, Cepeda explained that he gave testimony to the effect that he never distributed drugs with Reyes. The hearing justice continued the matter to give the state adequate time to review the Cepeda statement and to decide how to proceed.
At the hearing justice’s behest, the state filed a motion for summary dismissal. At the hearing on the motion for summary dismissal, the hearing justice gave Reyes an opportunity to be heard. Reyes responded as follows: “I don’t have anything to say right now. Everything that I wanted to say, I put in the memorandum.” This memorandum mentioned only two documents in support - of it: the Cepeda statement and a notice of the state’s intent to pursue a habitual offender sentence. The hearing justice determined that there were no genuine issues of material fact as to any of the claims raised in the application and granted the state’s motion. First, with respect to the allegations of ineffective assistance of counsel, the hearing justice reasoned that, because Reyes ultimately received a “less-than-jail sentence on an amended charge” and was not presented as a probation violator as a result of the plea agreement, Reyes was unable to satisfy the prejudice prong of the ineffectiveness inquiry. In addition to noting this favorable plea disposition, she observed that the Cepeda statement was neither an original document nor executed by Cepeda under the penalty of perjury and that, in any event, it was directed at the offenses with which Reyes was originally charged. The hearing justice therefore concluded that the statement “ha[d] no bearing on the amended charge to which [Reyes] pled.”
With .respect to Reyes’s challenge to the adequacy of the 1994 plea colloquy, the hearing justice, while acknowledging the presence of the Spanish plea form, found no fault in the trial justice’s colloquy. She noted that there was no evidence in the plea-colloquy transcript that indicated that Reyes had difficulty understanding the trial justice’s questions; there was no indication that Reyes needed to speak with trial counsel during the colloquy; no request for an interpreter was made; and Reyes responded in the affirmative on numerous, occasions when asked by the trial justice whether he understood á particular consequence of his guilty plea. The hearing justice rejected Reyes’s argument that either the trial justice or trial counsel was required to inform Reyes about any collateral consequence that might arise from his plea or that it might form the basis of a habitual-offender sentencing enhancement in the event that Reyes continued down the criminal path. Ultimately, the hearing justice concluded that Reyes understood the nature and consequences of his plea and that the plea was voluntary. Accordingly, the ■ hearing justice granted the *652 state’s motion for summary judgment and dismissed the application under § 10-9.1-6. Reyes timely appealed.[10]
II
Standard of Review for Summary Dismissal
Before turning to the merits of Reyes’s arguments on appeal, we first set forth the parameters under which an application can be summarily dismissed under § 10-9.1-6 — the procedure utilized by the hearing justice in this case. Section 10-9.1-6 provides, in pertinent part, as follows:
“(b) When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if there exists a genuine issue of material fact.
“(c) The court may grant a motion by either party for summary disposition of the application when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.”
Dismissal under § 10-9.1-6(b) is akin to a dismissal under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure and is subject to the same standard. Palmigiano v. State, 120 R.I. 402, 404-05, 387 A.2d 1382, 1384 (1978). In contrast, summary dismissal under § 10-9.1-6(c) “closely resembles” a grant of summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure, Palmigiano, 120 R.I. at 405, 387 A.2d at 1384, and “[t]he standards for granting a § 10-9.1-6(c) [summary dismissal] are identical to those utilized in passing on a summary judgment motion.” Palmigiano, 120 R.I. at 406, 387 A.2d at 1385. Critically, summary dismissal is improper if a genuine issue of material fact exists. See § 10-9.1-6(c). Thus, a hearing justice’s role in considering whether to dismiss an application summarily under § 10-9.1-6(c) is limited to determining whether genuine issues of material fact exist; the hearing justice cannot resolve those issues or “pass on the weight or credibility of the evidence.” Doyle v. State, 122 R.I. 590, 594, 411 A.2d 907, 909 (1980). On appeal from a summary dismissal under § 10-9.1-6, “[w]e will uphold the [hearing] justice’s decision only if the record shows that no genuine issue of material fact exists and the state is entitled to summary disposition as a matter of law.” Palmigiano, 120 R.I. at 406-07, 387 A.2d at 1385. As in cases in which we review the grant of summary judgment, our review is de novo.[11] See *653 Estrada v. Walker, 743 A.2d 1026, 1028 (R.I.1999).
Ill
Analysis
A
Sufficiency of Rule 11 Inquiry
Reyes first contends that his 1994 nolo contendere plea should be vacated because it did not conform to Rule 11 of the- Superior Court Rules of Criminal Procedure and was not a knowing, intelligent, and voluntary plea. He argues that the trial justice’s brief colloquy at the change-of-plea hearing was insufficient to ensure that he understood the nature of the charge and consequences of his plea and that the trial justice should have exercised his discretion to appoint an interpreter. At oral argument before this Court, Reyes took his contention one step further, arguing that, whenever a Spanish language plea form is utilized, a trial justice must appoint an interpreter even when one is not requested. Neither Rule 11 nor this Court’s jurisprudence supports such an absolute rule.
Rule 11 provides' in pertinent part:
“The court * * * shall not accept [a plea of guilty] or a plea of nolo contendere without first addressing the' defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. * * * The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea.”
Rule 11 thus sets forth two prerequisites that must be' satisfied at the plea colloquy before a plea of nolo contendere can be accepted: (1) a determination “that the plea is made voluntarily with understanding of the nature of the charge and thé consequences of the plea”; and (2) a finding “that there is a factual basis for the plea.” Id, Notably, neither prerequisite imposes the bright-line rule that Reyes champions before this Court. •
Similarly, this Court has never declared that a trial justice must appoint an interpreter in every case in which a non-English plea form is utilized. To the contrary, we have held that the trial justice has discretionary authority to appoint an interpreter, see State v. Ibrahim, 862 A.2d 787, 798 (R.I.2004), and we afford the trial justice “ ‘large discretion’ in the ‘selection, appointment, and retention of an interpret er.’ ” State v. Lopez-Navor, 951 A.2d 508, 513 (R.I.2008) (quoting State v. Deslovers, 40 R.I. 89, 115, 100 A. 64, 73 (1917)).[12] Absent “clear evidence of prejudice, we will not disturb the trial justice’s discretion.” Id.
In this case, “it is not readily apparent [from our review of the transcript of Reyes’s change-of-plea hearing] that [Reyes] did not have a basic, functional understanding of English.” Ibrahim, 862 A.2d at 798. Reyes answered all of the questions posed to him, and there is no indication that he was confused or had difficulty understanding the discourse at any point during the hearing. Reyes con *654 tends that the transcript of the change-of-plea colloquy “suggest[s] a lack of actual understanding since his responses [to the trial justice’s questions] were all non-descriptive “Yes’ and ‘No’ answers.” We disagree. When the trial justice asked whether Reyes wished to change his plea, Reyes answered affirmatively even before trial counsel was able to do so. Reyes also provided, without any apparent difficulty, his name and date of birth upon request. We glean nothing from the record to suggest that anything occurred at the hearing to put the trial justice on notice to inquire further into whether Reyes required an interpreter. In short, there is nothing in this record that suggests that the trial justice abused his discretion by failing sua sponte to appoint an interpreter.
We are also convinced that the change-of-plea colloquy otherwise satisfied Rule 11 and that Reyes’s plea was knowing, intelligent, and voluntary. The trial justice explained to Reyes that he was forfeiting several constitutional rights by entering a plea of nolo contendere, and he ensured that Reyes had no questions about those rights and understood the consequences of his plea. Additionally, the state recited the facts supporting the amended charge, Reyes acknowledged that those facts were true, and the trial justice found that there was a factual basis for the plea. See Rodrigues v. State, 985 A.2d 811, 315 (R.I.2009) (“This Court ‘shall not vacate a plea unless the record viewed in its totality discloses no facts that could have satisfied the trial justice that a factual basis existed for a defendant’s plea.’” (quoting State v. Frazar, 822 A.2d 931, 935-36 (R.I.2003))). Finally, the trial justice explained to Reyes the sentence that he would be imposing and ensured that Reyes had no questions about the consequences of the suspended sentence and accompanying probationary term. On this record, we must conclude that the trial justice’s finding that Reyes understood the nature and consequences of his plea is unassailable.
B
Ineffective Assistance of Counsel
Reyes next contends that the hearing justice improperly dismissed his claims of ineffective assistance of counsel because a genuine issue of material fact existed that precluded summary dismissal. Before addressing the propriety of the summary dismissal of his claims, however, we first briefly clarify the legal framework under which such a claim must be decided.
It is well established that, in this jurisdiction, ineffective-assistance-of-counsel claims are assessed under the familiar two-pronged test announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Bido v. State, 56 A.3d 104, 110 (R.I.2012); Brown v. Moran, 534 A.2d 180, 182 (R.I.1987); Barboza v. State, 484 A.2d 881, 883-84 (R.I.1984). Under this framework, an applicant for postconviction relief first “must establish that counsel’s performance was constitutionally deficient; ‘[t]his requires [a] showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed * * * by the Sixth Amendment.’ ” Bido, 56 A.3d at 110-11 (quoting Neufville v. State, 13 A.3d 607, 610 (R.I.2011)); see also Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To satisfy the performance prong, “the [applicant] must show that counsel’s representation fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Courts evaluate counsel’s performance “in a ‘highly deferential’ manner,” Bido, 56 A.3d at 111 (quoting Lynch v. State, 13 A.3d 603, 606 (R.I.2011)), em *655 ploying “a strong presumption that counsel’s conduct falls within the permissible range of assistance,” id. (quoting Neufville, 13 A.3d at 610). See also Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
The second prong of the Strickland standard requires an applicant to “show that he [or she] was prejudiced by this deficient performance.” Bido, 56 A.3d at 111 (quoting Lynch, 13 A.3d at 605). To satisfy the prejudice prong, “[t]he [applicant] must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052; see also Bido, 56 A.3d at 111.
In the years since our adoption of Strickland’s performance and prejudice prongs, however, a handful of our cases have somewhat amplified that standard. In State v. Dunn, 726 A.2d 1142 (R.I.1999), we stated, in dictum,[13] that:
“We note also that rarely, if ever, following conviction has any federal or state court permitted a defendant who has been represented by private counsel to later question, in post-conviction proceedings, the ineffectiveness or inefficiency of the trial counsel that the defendant chose and selected to represent him or her at trial. The ‘incompetency (or one of its many synonyms) of private counsel for the defendant in a criminal prosecution is neither a denial of due process under the Fourteenth Amendment, nor an infringement of the right to be represented by counsel under either the federal or state constitution, unless the attorney’s representation is so lacking that the trial has become a farce and a mockery of justice, in which case the judgment, violating either the Fifth, Sixth, or Fourteenth Amendment to the Federal Constitution, or a provision of a state constitution, is void.’ ” Id. at 1146 n. 4 (quoting Annotation, Incompetency of Counsel, 74 A.L.R.2d 1390, 1397 (I960)) (emphasis added).
Although by no means 'a constant feature of our ineffective-assistance-of-counsel jurisprudence, this farce-and-mockery language has reappeared on several occasions, both in cases where defense counsel evidently was privately retained[14] and in cases where it was unclear whether defense counsel was retained or appointed.[15] In this case, postconviction counsel and the hearing justice referenced this language when assessing Reyes’s allegations that trial counsel, who was privately retained, was ineffective. On appeal, Reyes argues that this language “is not part of the Sixth *656 Amendment . effective[-]assistance[-]of[-]counsel jurisprudence,”
We take this opportunity to abandon any distinction in our ineffective-assistance-of-counsel jurisprudence between privately retained defense counsel and court-appointed defense counsel. In Evitts v. Lucey, 469 U.S. 387, 395, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court declared that “the constitutional guarantee of effective assistance of counsel at trial applies to every criminal prosecution, without regard to whether counsel is retained or appointed.” Similarly, in Cuyler v. Sullivan, 446 U.S. 335, 344-45, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court cautioned that:'
“A proper respect for the Sixth Amendment disarms petitioner’s contention that .defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. * * * Since the State’s conduct of a criminal trial itself implicates the State in the defendant’s conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.”
Additionally, we are of the opinion that the farce-and-mockery language contained in Dunn and its progeny is a relic of a bygone era that has no place in assessing claims of ineffective assistance of counsel after Strickland. The farce-and-mockery standard evidently was first announced in Diggs v. Welch, 148 F.2d 667, 669, 670 (D.C.Cir.1945), and, by the time the United States Supreme Court decided Strickland in 1984, every federal circuit had rejected it in favor of a standard requiring reasonably competent or effective assistance. See Trapnell v. United States, 725 F.2d 149, 151-53, 155 (2d Cir.1983) (chronicling origin of and gradual departure from farce-and-mockery standard and adopting standard of reasonably competent assistance in its place).[16] Nothing the Supreme Court said in Strickland purported to revive the farce-and-mockery standard. Moreover, the farce-and-mockery standard has its roots in the Due Process Clause of the Fifth Amendment to the United States-Constitution, see Diggs, 148 F.2d at 669; see also Trapnell, 725 F.2d at 154, while claims of ineffective assistance of counsel are grounded in the guarantee of the assistance of counsel contained in the Sixth Amendment to the United States Constitution, see Strickland, 466 U.S. at 684-86, 104 S.Ct. 2052, and its Rhode Island counterpart, the Declaration of Rights, article 1, section 10 of the Rhode Island Constitution, see Merida v. State, 93 A.3d 545, 549 (R.I.2014). Henceforth, claims of ineffective assistance of counsel — whether the attorney is privately retained or court appointed — shall continue to be decided by reference to the familiar performance and prejudice prongs of the Strickland standard.[17]
*657 With the governing standard in proper focus, we turn to its application in this case. On appeal, Reyes contends that the Cepeda statement raised a genuine issue of material fact that precluded summary dismissal of his claims of ineffective assistance of counsel. We take no issue, however, with the hearing justice’s determination that no genuine issue of material fact existed. While the Cepeda statement may cause some to have doubts about Reyes’s involvement in the 1994 incident, the statement is riddled with maladies that barred it from the hearing justice’s consideration on summary dismissal. Part and parcel óf our summary judgment standard (which thé summary dismissal standard so closely mirrors) is that the evidence to be considered when determining whether a genuine issue of material fact exists must be admissible. See Carlson v. Town of South Kingstown, 131 A.3d 705, 708 (R.I.2016) (“We will affirm a lower court’s decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.” (emphasis added) (quoting Daniels v. Fluette, 64 A.3d 302, 304 (R.I.2013))); see also Mruk v. Mortgage Electronic Registration Systems, Inc., 82 A.3d 527, 534 (R.I.2013) (recognizing that affidavits must be “made on personal knowledge, • * * * set forth such facts as would be admissible in evidence, and * * * show affirmatively' that the affiant is competent to testify to the matters stated theréin[,]” and that the failure to comply with these requirements renders them inadmissible and, thus, “useless in establishing the absence of a genuine issue of material fact” (quoting Nichola v. Fiat Motor Co., 463 A.2d 511, 513 (R.I.1983))); Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp., 994 A.2d 54, 57 (R.I.2010) (acknowledging that summary judgment should be affirmed only if no genuine issue of material fact exists based upon a review of the admissible and competent evidence); Nichola, 463 A.2d at 513-14 (noting that statements within an affidavit that “amounted to little more than hearsay” should not be considered by a trial justice in ruling on a summary judgment motion).
Here, the Cepeda statement would not stand the slightest chance of being admissible. First, the witness statement is not presented in the form of an affidavit or other type of sworn testimony, as is made obvious based upon the method of delivery (via telephone). Furthermore, the .statement was somehow “notarized” by one Nicholas Cardarelli, with, in place of the witnesses’s 1 signature, the words “RECORDED' OVER TELEPHONE.”[18] In addition,, to the1 extent that the witness statement contains statements delivered to and transcribed by Cardarelli, the statements constitute hearsay. To that end, we have held that, where statements within a sworn affidavit would constitute hearsay, such statements should not be considered in ruling bn a summary judgment motion. See Nichola, 463. A.2d at 513-14. Thus, the hearing justice properly concluded that the Cepeda .statement did not- create a genuine issue of material fact.[19] Aside *658 from a notice of the state’s intent to pursue a habitual offender sentence, Reyes produced nothing else in opposition to the state’s motion for summary dismissal; the hearing justice properly granted the moT tion.[20]
C
Postconviction Counsel’s Compliance with § 10-9.1-5 and Sfyatney
Finally, Reyes contends that the efforts of his postconviction counsel were inadequate. Specifically, he faults post-conviction counsel for “simply responding]” to Reyes’s postconviction claims instead of “mak[ing] an effort to narrow [the] issues, re[ ]frame[,] or supplement them,” not speaking with trial counsel or reviewing his files, and failing to hire an investigator. We reject these contentions.
“[T]he right to counsel in a postconviction-relief proceeding is a matter of legislative grace, not constitutional right.” [21] Campbell v. State, 56 A.3d 448, 454 (R.I.2012). Section 10-9.1-5 provides that, in cases like this one where the Office of the Public Defender is unable to represent the applicant, “the court shall assign counsel to represent the applicant.” As is true in other contexts, “[t]he hallmarks of a meaningful attorney-client relationship * * *, including zealous advocacy and the protection of the [client’s] confidences,” exist between the applicant and counsel appointed under § 10-9.1-5. Campbell, 56 A.3d at 454-55; see also id. at 455 (“Section 10-9.1-5 cannot be satisfied with anything less than a meaningful attorney- *659 client relationship between appointed counsel and his or her client.”).
Of course, relations between attorney and client do not always remain harmonious. In some cases, postconviction applicants insist on pressing claims that are frivolous or mendacious, notwithstanding the risk of sanctions for violating Rule 11 of ,the Superior Court Rules of Civil Procedure.[22] Attorneys who are appointed to represent a postconviction applicant, on the other hand, cannot ignore the requirements of Rule. 11. In recognition of this potential conflict, we adopted a mechanism in Shatney so “that an attorney * * * appointed to represent an indigent applicant may withdraw from that representation when it becomes clear, after a reasonable investigation, that some or all of the applicant’s claims lack merit.” Campbell, 56 A.3d at 455-56.
Within this framework, Reyes’s assignments of error regarding postconviction counsel are unpersuasive. Our decision in Campbell involved the paradigm example of noncompliance with § 10-9.1-5. In that case, despite the applicant’s repeated requests for counsel, the hearing justice appointed an attorney to conduct an “independent examination” .of whether the applicant’s claims were meritorious. Campbell, 56 A.3d at 451, 452. The hearing justice repeatedly informed the applicant that the appointed counsel did not represent him. Id. at 452-53. We determined that the appointment of counsel in Campbell failed to comply with the requirements of § 10-9.1-5. Campbell, 56 A.3d at 456, 461-62.
This case is nothing like Campbell.' The record is clear that postconviction counsel functioned as Reyes’s attorney;[23] he met with Reyes on. four separate occasions and expended considerable effort to locate the alleged exculpatory bail-hearing testimony about which, according to Reyes, trial counsel knew or should have known. At the hearing on the motion to withdraw, postconviction counsel represented that he “spent hours” attempting to locate the alleged bail-hearing testimony, and he chronicled his efforts in detail. In denying Reyes’s motion for funds to hire a private investigator, the hearing justice explained that “[postconviction counsel] did everything that [he] could do to.determine if there was any recording from that hearing.” Against this backdrop, Reyes’s argument with respect to postconviction counsel’s failure to hire an investigator rings hollow. It was permissible for post-conviction counsel to take it upon himself to perform the investigative responsibilities that he deemed necessary; he was not required to hire an investigator to undertake duplicative efforts. Cf. Campbell, 56 A.3d at 455-56 (“The procedure set forth in Shatney simply applies Rule ll’s proviso to the context of the postconviction remedy, such that an attorney * * * appointed to represent an indigent applicant may withdraw from that representation when it becomes clear, after a reasonable investigation, that some or all of the applicant’s claims lack merit.” (emphasis added)).
*660 Reyes’s complaint about postconviction counsel’s failure to discuss the case with trial counsel or review his files similarly misses the mark. In his no-merit memorandum, postconviction counsel focused on Reyes’s inability to establish prejudice because of the favorable disposition that trial counsel secured for .his client. Postconviction counsel noted that, in marked contrast to the potential for significant jail time that Reyes faced if convicted on the original charges, trial counsel was able to persuade the state to dismiss one charge, amend the other charge to a lesser offense, agree to a non-incarcerative sentence, and refrain from presenting Reyes as a probation violator. -While Reyes was insisting that exculpatory testimony mirroring the allegations in the Cepeda statement was given at his bail hearing, postconviction counsel had expended considerable effort to locate this alleged bail-hearing testimony to no avail, and the hearing justice appropriately concluded that “there-was no testimony given under oath exonerating [Reyes in] this matter,” Thus,- Reyes’s claim attacking postconviction counsel’s alleged shortcomings is without merit.
Finally, it is significant that, pursuant to Shatney, 755 A.2d at 135, postconviction counsel filed a comprehensive memorandum in which he — as Reyes acknowledged at the hearing on the motion to withdraw — correctly identified each of the many claims asserted in Reyes’s application and thoroughly explained the reasons why, in counsel’s professional opinion, they lacked merit. On appeal, Reyes complains that postconviction counsel failed to narrow or reframe the claims contained in his application, but appellate counsel similarly makes no effort to articulate how those claims could have been reworked, and an attorney will not always be able to salvage a meritless application from the scrap heap. Cf. Campbell, 56 A.3d at 458 (éx-plaining that “appointed counsel may, in an appropriate case, frame the applicant’s claims in such a way as to avoid § 10-9.1-8’s waiver rule”). We note that a tension is unavoidable in cases in which the Shat-ney procedure is invoked. Our decisions in Campbell and Shatney recognize that, in some cases, appointed counsel’s efforts must, at some point, shift from diligent investigation and meaningful representation to dispassionate explanation of why, in the exercise of counsel’s professional judgment, the claims' lack merit. See Campbell, 56 A.3d at 455-56; Shatney, 755 A.2d at 135. Importantly, this is a case where the paradigm shift properly occurred, whereas Campbell involved a situation where counsel acted as an objective, independent, and dispassionate outsider from the outset.
For these reasons, we conclude that postconviction counsel . functioned as Reyes’s attorney and, because he deemed Reyes’s application to be meritless based on the record that existed at that time, he complied with the procedure outlined in Shatney. See Shatney, 755 A.2d at 135. Similarly, the hearing justice complied with our directive in Shatney that a hearing be held at which Reyes was able to respond to the no-merit memorandum, and, at the conclusion of the hearing, she appropriately granted the motion to withdraw.[24] See id.
*661 Although we affirm the hearing justice’s decision to allow postconviction counsel to withdraw, we nonetheless pause to remind the bench and the bar that the Shatney procedure is not the endgame. An attorney is not appointed under § 10-9.1-5 to perform a screening function or to steer the case towards the filing of a no-merit memorandum and then withdraw from the arena. Rather, § 10-9.1-5 directs that an- attorney be appointed to represent the applicant in connection with the litigation of his or her, application, see Campbell, 56 A.3d at 454-56, 461, and the Shatney procedure is, a judicially created escape hatch to be opened only in those cases where the appointed attorney’s obligations under Rule 11 require withdrawal because the only alternative, in counsel’s professional opinion, is the impermissible pursuit of irremediably frivolous claims.[25]
IV
Conclusion
For the reasons articulated above, we affirm the judgment summarily dismissing Reyes’s application. The papers may be remanded to the Superior Court.[26]

.The record is unclear as to Reyes’s Ml name. Reyes signed his application with the name Pedro Reyes, but the caption of that document identifies him as Pedro Muriel Reyes. Additionally, during a change-of-plea hearing in 1994, Reyes indicated that his name was "Pedro Jaun [sic] Reyes Muriel.” We simply shall refer to applicant as Reyes.

. The facts giving rise to the pertinent offenses with which Reyes was charged have been gleaned from the criminal-information package.

. The record is also unclear as to the precise spelling of Cepeda’s last name; in some documents it is spelled "Cepeda,” and, in others, "Cepada.”

. To distinguish between the different Superi- or Court justices involved in the relevant proceedings, we refer to the justice who presided over Reyes’s 1994 change-of-plea hearing as "the trial justice” and the justice who presided over the hearings on his application as "the hearing justice.”

. The facts underlying these convictions are set forth in detail in our opinion affirming his conviction, State v. Reyes, 984 A.2d 606, 609-12 (R.I.2009), and need not be repeated here.

. Despite the lag time between the 1994 plea and the filing of the application, the state opted not to argue below that the application should be dismissed as untimely under the doctrine of laches.

. "In Shatney [v. State, 755 A.2d 130 (R.I.2000) ], [this Court] established a procedure by which an attorney * * * who has been appointed to represent an applicant for post-conviction relief may later seek to withdraw from that representation under specific and limited circumstances[.]” Campbell v. State, 56 A.3d 448, 455 (R.I.2012). Specifically, we provided that: . ■ •
"[U]pon notice to the applicant, counsel for an applicant may request permission from the court to withdraw, based upon an as *650 sessment that the application has no arguable merit. To do so, however,'[postconviction] counsel must file with the court and serve upon the applicant a motion to withdraw accompanied by a ‘no-merit’ memorandum that details the nature and extent of his or her review of the case, lists each issue the applicant wished to raise, and explains why in counsel’s professional opinion those issues and any others that he or she may have investigated lacked merit. The court then must conduct a hearing with the applicant present. If, based upon its review of counsel’s assessment of the potential grounds for seeking post-conviction relief and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant that he -or she shall be required to proceed pro se, if he or she chooses to pursue the application.” Shatney, 755 A.2d at 135.

. Postconviction counsel identified twelve claims, many of which overlapped one another, that Reyes raised in his application: (1) ineffective assistance of counsel in failing to adequately prepare for representation of Reyes; (2) ineffective assistance of counsel in failing to research and interview the important state witnesses; (3) ineffective assistance of counsel in trial counsel’s failure to meet with Reyes and to communicate with him through an interpreter; (4) ineffective assistance of counsel in failing to file appropriate pretrial motions; (5) Reyes’s plea was "tainted and coerced” by the illegal and improper actions of the strike force; (6) ineffective assistance of counsel in allowing Reyes to plead nolo contendere without the assistance of an interpreter; (7) ineffective assistance of counsel in trial counsel’s failure to discuss the law governing the crimes with which Reyes was charged; (8) ineffective assistance of counsel in failing to advise Reyes as to the legal consequences of a plea of nolo contendere; (9) ineffective assistance of counsel in allowing Reyes to enter his plea when trial counsel knew, or reasonably should have known, that exculpatory evidence existed that, at the veiy least, cast reasonable doubt on Reyes’s guilt; (10) the photo identification in which Reyes was identified as the driver of the automobile was unconstitutional; (11) the trial justice should not have accepted his plea in 1994 because it was unclear whether Reyes understood the consequences of entering into the plea; and (12) the trial justice failed to review the case to determine whether Reyes was guilty of the charged offenses.

. See Appendix A.

. After Reyes appealed but before oral argument in this case, the General Assembly amended § 10-9.1-9 to require a party aggrieved by a final judgment entered in a post-conviction-relief proceeding to seek review by filing a petition for writ of certiorari with this Court. See P.L. 2015, ch. 91, § 1; P.L. 2015, ch. 92, § 1.

. In past cases involving summary dismissal of an application, we have remarked that we defer to the factual findings of a hearing justice in the postconviction-relief context. See, *653 e.g., Miguel v. State, 774 A.2d 19, 21 (R.I.2001). Although undeniably a correct explication of the manner in which we review the factual findings of a lower tribunal, this standard of review is inapposite in cases where the application is summarily dismissed because no such findings can be made by the hearing justice at this juncture.

. General Laws 1956 chapter 19 of title 8 is not implicated in this case because Reyes entered his plea before the effective date of that chapter.

. In State v. Dunn, 726 A.2d 1142, 1145-46 (R.I.1999), we held that the trial justice clearly erred in granting the defendant’s motion for a new trial on the ground of ineffective assistance of counsel — an issue that was not raised by the defendant.

. See, e.g., Brown v. State, 964 A.2d 516, 527 n. 15 (R.I.2009); Chalk v. State, 949 A.2d 395, 398 (R.I.2008); Burke v. State, 925 A.2d 890, 893 (R.I.2007); Larngar v. Wall, 918 A.2d 850, 856 & n. 6, 858 (R.I.2007); Hampton v. State, 786 A.2d 375, 381 (R.I.2001); Vorgvongsa v. State, 785 A.2d 542, 548 (R.I.2001); Heath v. Vose, 747 A.2d 475, 477 n. 1 (R.I.2000); cf. Hassett v. State, 899 A.2d 430, 434 n. 3 (R.I.2006) (although not employing the farce-and-mockery language, explaining that 'challenges to the performance of private counsel in postconviction relief proceedings rarely succeed, and when a person selects his or her own attorney, any alleged deficiencies seldom amount to an infringement of one’s constitutional rights”).

.See, e.g., Pelletier v. State, 966 A.2d 1237, 1241 (R.I.2009); Moniz v. State, 933 A.2d 691, 696, 697 (R.I.2007); Ferrell v. Wall, 889 A.2d 177, 191 (R.I.2005).

. We also mote that the annotation from which we quoted the farce-and-mockery language in Dunn, 726 A.2d at 1146 n. 4, similarly predated Strickland.

. We do not imply that the difference in phraseology between the performance and prejudice prongs of Strickland v. Washington, 466 U.S, 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the farce-and-mockery language would necessarily make a difference in the adjudication of an ineffective-assistance-of-counsel claim in any particular case; indeed, we suspect that such a difference would exist "only in the rarest case.” Strickland, 466 U.S. at 697, 104 S.Ct. 2052; see also Trapnell v. United States, 725 F.2d 149, 153 (2d Cir. 1983) ("[W]e have repeatedly applied both standards[ — the farce-and-mockery standard and the standard of reasonably competent assistance — ]in recent years and never found that the result of a case hinged on the choice of a particular standard.”). Our review of the cases in which we have employed the farce- *657 and-mockeiy language convinces us that none of them fall into this exceedingly’narrow category. "

. Although we are not in a position to opine as to whether any of the Standards of Conduct for Notary Publics were .violated, we are troubled by the fact that Cardarelli affixed his signature and notary, seal to a statement that was not given in person by Cepeda, nor was it signed by Cepeda. ’

. The dissent downplays the defective and untrustworthy nature of the Cepeda statement and suggests that the notary public’s "mis *658 take” should not foreclose Reyes’s postconviction claim. However, because of the notary’s disregard for his duties, it is unclear whether Cepeda was even the person with whom he spoke on the telephone and from whom he received a statement. Contrary to the dissent’s insistence, the Cepeda statement was useless for purposes of opposing summary dismissal consistent with the standards underlying Rule 56 of the Superior Court Rules of Civil Procedure.

. In concluding that the production of the Cepeda statement should have precluded summary disposition, the dissent suggests that we turn both our existing postconviction relief case law and § 10 — 9.1—6(c) on its head. When a hearing justice grants a motion to withdraw pursuant to Shatney, the applicant has the option of proceeding pro se on his application or retaining another attorney at his own expense. See Shatney, 755 A.2d at 135. Independent of this withdrawal, if the circumstances warrant, the hearing justice “may grant a motion by either party for summary disposition of the application when * ⅜ * there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.” Section 10 — 9.1— 6(c). The applicant is not entitled to any special treatment because — after his postcon-viction claims were determined to be merit-less — he is forced to now proceed pro se. Nevertheless, the dissent suggests the system should bend over backwards for an applicant after withdrawal of postconviction counsel by allowing an applicant to oppose summary dismissal with inadmissible evidence, or, in the alternative, entitling the applicant to a warning and a second shot when he submits inadmissible evidence. This is not only impractical, but also flies in the face of longstanding authority.

. Although Reyes cites Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), in his show-cause statement for an unrelated proposition, he did not argue to the Superior Court and has not argued to this Court on appeal that there is a constitutional right to counsel in this collateral proceeding with respect to his claims of ineffective assistance of counsel. The United States Supreme Court in Martinez noted that it is an open question "whether a prisoner has a [constitutional] right to effective counsel in collateral proceedings [that] provide the first occasion to raise a claim of ineffective assistance at trial,” but it did not decide that question in Martinez, id. at 1315, and has not decided it since. Because it is not properly before us in this case, we express no opinion on this issue.

. Rule 11 of the Superior Court Rules of Civil Procedure, which applies in the postcon-viction context, see Campbell, 56 A.3d at 455, gives the trial court discretion to impose sanctions where a signed pleading, motion, or other paper is not "well grounded in fact and * * ⅜ warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law * * Rule 11; see generally FIA Card. Services, N.A. v. Pichette, 116 A.3d 770, 778-79 (R.I.2015).

. Indeed, when Reyes expressed some confusion about whether postconviction counsel represented him of the state, the hearing justice promptly reassured him that postconviction counsel was his attorney.

, The dissent states that it is “compelled to express [its] belief that the time has come to abrogate Shatney, at least as it relates to first-time applicants.” As the dissent recognizes, however, "Shatney’s life expectancy was .not addressed by the parties in this case[,]” and, thus, is not before this Court. We agree that this issue is not before us, and decline to address it further. The hearing justice and postconviction counsel properly followed the Shatney procedure, which was the law at the time of the hearings below and the time the appeal was taken, and which continues to be the law today:

. We reiterate that an attorney’s , reluctance or refusal to accept an-appointment "is not embraced by the dictates of Shatney * * ⅜, and the fact that counsel may decline the appointment should not result in the summary dismissal of an applicant's claims ab.sent compliance with § 10-9.1-5.” Campbell, 56 A.3d at 456 n. 5; see also Shatney, 755 A.2d at 136 ("The appointment of Shatney's first counsel, who then limited her entry of appearance and apparently declined to, pursue the application and/or withdrew before pursuing petitioner’s claim, before the court allowed her to withdraw, and before the court passed on the alleged lack of merit of such an application, did not fulfill the requirements of § 10-9.1-5 in this case,”).

. Notwithstanding the state’s failure to raise the doctrine of laches before the hearing justice, the state argued in its papers to this Court that review of that issue "is not necessarily foreclosed.” At oral argument, however, the state conceded that, because this affirmative defense was not raised below, it has been waived. This concession is well-taken. See Andrukiewicz v. Andrukiewicz, 860 A.2d 235, 241 (R.I.2004) (holding that the plaintiff failed to preserve defense of laches for appellate review where the plaintiff failed to raise it before the trial justice). ‘